Van Voorhis, J.
Plaintiff’s intestate supplied information to the Police Department of the City of New York leading to the arrest of a dangerous fugitive from justice known as Willie Sutton, a criminal of national reputation. Schuster’s part in Sutton’s capture was widely publicized. Schuster immediately received communications threatening his life, of which he notified the police. Three weeks later Schuster was shot and killed while approaching his home in the evening. There is no suggestion that Schuster was an underworld character. On the contrary, he appears to have been a public spirited young man who had studied Sutton’s picture on an FBI flyer that had been posted in his father’s dry-goods store, asking for Sutton’s whereabouts.
The complaint is drawn upon the theory that Schuster was shot in consequence of the information about Sutton supplied by Schuster to the police, and that the City of New York owes a special duty under the circumstances alleged to protect persons who have thus co-operated in law enforcement. It is alleged that the city failed to exercise reasonable care in supplying Schuster with police protection upon demand, that Schuster’s death was due to negligence of the city in recklessly exposing him to danger, in advising him that the threats upon his life were not seriously made, in failing to supply him with a bodyguard and in heedlessly imparting to him a false impression of safety and lack of danger. The action is not based on any absolute liability claimed to exist on the part of the city, but upon its alleged failure to use ordinary or reasonable care for his security.
*80 This being a motion addressed to the sufficiency in law of the complaint, the objection taken by the city may be dismissed at once that plaintiff will be unable to prove that Schuster’s death was the result of his having informed upon Sutton. It is a sufficient answer to that objection that the complaint alleges that Schuster’s death did result from the negligence of the city previously stated. No more needs to be alleged in a pleading (Sandy v. Wicks, 256 App. Div. 1007). It would be premature to hold now that plaintiff will be unable to prove this allegation at the trial for the reason that no individual has been indicted thus far for Schuster’s murder. Plaintiff is entitled to a day in court upon this issue, which should not be prejudged in advance of trial. Perhaps by the time of the trial the identity of Schuster’s murderer will have become known and the cause of his act be further clarified. It might even be held, without identification of Schuster’s assailant, that the probability is so great of his having been shot by reason of his disclosures resulting in Sutton’s capture, that a question of fact would be created on this issue. Questions such as that should be reserved for a trial, and cannot be disposed of by a motion to test the legal sufficiency of the complaint on which all of the allegations of fact must be assumed to be true.
The single issue now presented is whether a municipality is under any duty to exercise reasonable care for the protection of a person in Schuster’s situation. Predictions of dire financial consequences to municipalities are waved in our faces if Schuster’s estate is allowed to recover for his death. An array of authorities is cited on the proposition that there is no liability to the general public from failure of police or fire protection (Murrain v. Wilson Line, 270 App. Div. 372, affd. 296 N. Y. 845; Steitz v. City of Beacon, 295 N. Y. 51; Moch Co. v. Rensselaer Water Co., 247 N. Y. 160; Rocco v. City of New York, 282 App. Div. 1012). One might think that the floodgates of liability have been opened in negligence and compensation cases against municipalities and other defendants where the liability is less clear than it is under the allegations of this complaint (cf. 31 Texas L. Rev. 630). In our view the public (acting in this instance through the City of New York) owes a special duty to use reasonable care for the protection of persons who have collaborated with it in the arrest or prosecution of crimi *81 nals, once it reasonably appears that they are in danger due to their collaboration. If it were otherwise, it might well become difficult to convince the citizen to aid and co-operate with the law enforcement officers (see Note, 58 W. Va. L. Eev. 308). To uphold such a liability does not mean that municipalities are called upon to answer in damages for every loss caused by outlaws or by fire. Such a duty to Schuster bespeaks no obligation enforcible in the courts to exercise the police powers of government for the protection of every member of the general public. Nevertheless, where persons actually have aided in the apprehension or prosecution of enemies of society under the criminal law, a reciprocal duty arises on the part of society to use reasonable care for their police protection, at least where reasonably demanded or sought. Such a duty would be performed by the regular organs of government, in this instance, by the City of New York. The duty of everyone to aid in the enforcement of the law, which is as old as history, begets an answering duty on the part of government, under the circumstances of contemporary life, reasonably to protect those who have come to its assistance in this manner.
Municipalities have been held liable to a bystander negligently shot by a policeman engaged in an altercation with another (Wilkes v. City of New York, 308 N. Y. 726); to a taxicab driver shot by a passenger negligently placed in his cab by policemen (Lubelfeld v. City of New York, 4 N Y 2d 455); to the estate of an arrested man who died from pneumonia caused by exposure in the jail and failure to treat a fractured hip and elbow (Dunham v. Village of Canisteo, 303 N. Y. 498); to the estate of a man negligently shot by a policeman for making a disturbance while intoxicated (Flamer v. City of Yonkers, 309 N. Y. 114); to the estate of a man arrested for public intoxication who died from cerebral hemorrhage in consequence of failure of the police to procure medical aid (O’Grady v. City of Fulton, 4 N Y 2d 717); to a wife shot by her husband to whom the police had negligently returned a pistol (Benway v. City of Watertown, 1 A D 2d 465); and to a bystander injured while directing traffic at the instance of a police officer (Adamo v. P. G. Motor Freight, 4 A D 2d 758). In McCrink v. City of New York (296 N. Y. 99) a city was held liable for negligently having omitted to discharge a police *82 officer by whom, plaintiff’s intestate was shot. In Meistinsky v. City of New York (309 N. Y. 998) the estate of a hold-up victim recovered who had been killed by an untrained officer’s bullets. Negligence of the city was found in its omission to use reasonable care in training the police officer so that he could shoot straight and hit the criminal instead of his victim. None of these actions could have been brought until after the waiver of governmental immunity by section 12-a (now § 8) of the Court of Claims Act (Bernardine v. City of New York, 294 N. Y. 361), but in each of them liability arose from negligence of a city in the exercise of the police power, and in at least two of them the negligence consisted in nonfeasance rather than in misfeasance (McCrink v. City of New York, supra; Meistinsky v. City of New York, supra).
That distinction at best furnishes an incomplete formula, as the opinion of the court by Chief Judge Cabdozo says in Moch Co. v. Rensselaer Water Co. (supra, p. 167). The opinion in the Mock case states: “If conduct has gone forward to such a stage that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward (Bohlen, Studies in the Law of Torts, p. 87).”
In a situation like the present, government is not merely passive; it is active in calling upon persons “in possession of any information regarding the whereabouts of ” Sutton, quoting from the FBI flyer, to communicate such information in aid of law enforcement. Where that has happened, as here, or where the public authorities have made active use of a private citizen in some other capacity in the arrest or prosecution of a criminal, it would be a misuse of language to say that the law enforcement authorities are merely passive. They are active in calling upon the citizen for help, and in utilizing his help when it is rendered. They have gone forward to such a stage, paraphrasing the opinion in the Mock case (supra), that inaction in furnishing police protection to such persons would commonly result, not negatively merely in withholding a benefit, ■but positively or actively in working an injury. Under such circumstances, we there said ‘ ‘ there exists a relation out of which arises- a duty to go forward ”. Such a relationship *83 existed here. The duty of Schuster to aid in law enforcement by informing the police of the whereabouts of Sutton is implied by the decision in Matter of Babington v. Yellow Taxi Corp. (250 N. Y. 14). For present purposes it matters little whether this duty be described as legal or moral (People ex rel. Central Trust Co. v. Prendergast, 202 N. Y. 188, 197, 199-200).
The reciprocal governmental duty to take reasonable measures to assure protection, to be sure, did not develop into enforcible legal liability until government waived its immunity from suit by the adoption of section 12-a (now § 8) of the Court of Claims Act in 1929, nor was the effect of such waiver fully understood until the decision in 1945 of Bernardine v. City of New York (supra). This waiver of governmental immunity removed the bar that previously prevented actions based on negligence of the police and made possible recoveries in the cases which have been cited. In one sense all of those causes of action grew out of the waiver of governmental immunity. But they were not created by waiver of governmental immunity, but by the common law, which
‘ ‘ is the legal embodiment of practical sense. It is a comprehensive enumeration of principles sufficiently elastic to meet the social development of the people. Its guiding star has always been the rule of right and wrong, and in this country its principles demonstrate that there is in fact, as well as in theory, a remedy for all wrongs. The capacity of common law for growth and adaptation to new conditions is one of its most admirable features.” (11 Am. Jur., Common Law, § 2, pp. 154-155.)
While governmental immunity remained in effect, this type of court action remained in abeyance. It remained in abeyance not on account of absence of duty on the part of a municipality to the injured or deceased person, but for the reason that where the factual basis of the claim was involved in the performance of a governmental function (such as police duty), the State had not permitted itself or its political subdivisions or municipal corporations to be sued. Where the immunity was removed, this bar no longer stood against the enforcement of civil liability arising from breach of a duty that existed before, but which could not be enforced until the immunity was waived.
*84 Even before the removal of governmental immunity, the Supreme Court of the United States had occasion to declare the duty of government toward a private citizen who reports a violation of law to the law enforcement authorities. The case of Matter of Quarles and Butler (158 U. S. 532) concerned the prosecution of persons who by concerted action conspired to prevent a private citizen from informing against a criminal. Quoting from its opinion in Ex Parte Yarbrough (110 U. S. 651), the United States Supreme Court said in the Quarles case that it is the duty of government to see that a private citizen may exercise freely the right to notify the enforcement authorities of law violations,
“ and to protect him from violence while so doing, or on account of so doing. This duty does not arise solely from the interest of the party concerned, but from the necessity of the government itself, that its service shall be free from the adverse influence of force and fraud practiced on its agent ”.
The Quarles case (supra) envisages a civic duty as well as a right to inform, and contemplates that the informant shall be protected on account of doing so. Although not employed as a sleuth, such a person comes into the relationship of the government’s “ agent ”.
Such a duty on the part of government to persons aiding in law enforcement is recognized by section 1848 of the Penal Law. That section creates an absolute liability against municipal corporations for damages arising from the personal injury or death of persons injured or killed while aiding policemen at their direction in making arrests. The existence of some duty on the part of the private citizen to assist in law enforcement is so plain that this statute makes it a misdemeanor to refuse to aid a police officer upon his command. This statute goes farther in some respects than the cause of action alleged in the instant complaint, in that it does not rest the liability of the municipality upon its negligence but imposes liability whenever such a person is injured or killed while aiding an officer in making an arrest. It is true that Schuster’s case does not fall within the coverage of this statute, inasmuch as he was not shot while Sutton was being arrested but three weeks later. He *85 was commanded in a certain sense to assist in Sutton’s apprehension, in view of the widely published notices calling upon all private citizens to report Sutton’s whereabouts to the public authorities. If the case fell within this statute, negligence would not have to be established against the City of New York in failing to supply police protection to Schuster, or in advising him that such protection was not necessary; the city would have had to pay to his estate upon merely showing that he had been called upon to aid in Sutton’s arrest and had been killed while doing so. This statute does not measure the entire length and breadth of the city’s liability for negligence of the police, as the cases cited earlier in this opinion show. The existence of section 1848 of the Penal Law does not defeat plaintiff’s common-law cause of action. On the contrary, it reflects a public policy that municipalities shall respond in damages to private citizens or their estates who have been injured and killed as a result of aiding in law enforcement. This statute contains no language barring plaintiff’s common-law remedy. The rule is that “ A statute in the affirmative, without any negative expressed or implied, takes away no preexisting rights or remedies; as a general rule, it operates merely to furnish an additional remedy for the enforcement of a right” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 34). This commentary continues: “ The affirmative statute is merely declaratory and does not repeal the common law relating to the subject; on the contrary, the two rules coexist. In other words, where a remedy existed at common law for the wrong or injury against which a remedial statute is directed, if such statute provides a more enlarged or a summary or more efficient remedy for the party aggrieved, but does not in terms or by necessary implication deprive him of the remedy which existed at common law, the statutory remedy is considered as merely cumulative, and the party injured may resort to either at his election” (citing Tremain v. Richardson, 68 N. Y. 617, and other cases).
Section 1848 of the Penal Law, while it recognizes a duty on the part of municipal corporations to persons who are killed or injured from aiding in the apprehension of criminals, neither expressly nor by implication repeals the common-law remedy. It does not purport to cover the same ground as the cause of action alleged in the complaint, and thereby to preclude the *86 maintenance of a common-law action. The statute goes farther in some respects, by making liability absolute to those who come within its terms. The instant action is based on negligence. It is grounded on negligence of the police in the failure to exercise reasonable care for the protection of Schuster after he had received threatening letters as a result of its becoming publicly known that he had been instrumental in the arrest of Sutton. In contrast, the statutory cause of action lies in cases to which it applies even if the police and other public authorities have taken the utmost care. This in itself indicates that no implied exclusion of a common-law remedy for negligence could have been intended, inasmuch as the statute has nothing to do with negligence. The statute and the common-law right of action are different in scope. What is important is that the governmental policy behind the statute indicates care and solicitude for the private citizen who co-operates with the public authorities in the arrest and prosecution of criminals. That is the bearing which section 1848 of the Penal Law has on this case. Statutes have played their part in the formation of the common law, and, like court decisions that are not strictly analogous, sometimes point the way into other territory when the animating principle is used as a guide. (Michalowski v. Ey, 4 N Y 2d 277, 282, citing Pound, Common Law and Legislation, 21 Harv. L. Rev. 383, 385-386; Stone, The Common Law in the United States, 50 Harv. L. Rev. 4, 13.) Here Schuster’s case is within the spirit if not the coverage of section 1848 of the Penal Law. The remedy supplied by that section is not available to plaintiff, but the care and solicitude which it manifests toward those who aid in law enforcement dispels any inference that the public policy of the State is the other way. This section contains nothing which implies that the Legislature intended to nullify plaintiff’s common-law remedy for negligence under the circumstances described.
The judgment appealed from should be reversed, and defendant’s motion to dismiss the complaint should be denied, with costs in all courts.