509 P.2d 1059

**Manuel H. DURAN and Esther Duran, husband and wife, Appellants,**

v.

**CITY OF TUCSON, a municipal corporation, the Tucson Fire Department, and L. F. Petersen, Fire Chief, Appellees.**

**No. 2 CA–CIV 1315.**

Court of Appeals of Arizona, Division 2.

May 15, 1973.

Rehearing Denied June 19, 1973.

Review Denied July 17, 1973.

Richard L. Keefe, Pete Rubi and Barber, Haralson, Giles & Moore, P. C. by D. Dale Haralson, Tucson, for appellants.

Lesher & Scruggs, P. C. by John A. Wasley, Tucson, for appellees.

HOWARD, Judge.

In this appeal appellants claim that appellees should be liable for personal injuries Mr. Duran sustained as a result of an alleged negligent inspection by the City of Tucson Fire Department.

Since the court granted summary judgment in favor of appellees, we view the record in the light most favorable to appellants.

On February 18, 1971, Manuel Duran was working at his place of employment,

Dietz & Sons Body Shop in Tucson, Arizona. He had been employed for approximately three days. While he was removing gasoline from an automobile gas tank in the shop, the fumes were ignited causing a fire which seriously burned him. The fire was apparently caused when the flames from a gas heater located in the shop ignited the gasoline fumes.

John Dietz, owner and operator of the business, stated at deposition that the gas heater was located upon the floor in proximity to where Duran was working; that the City of Tucson Fire Department made periodic annual inspections on the premises; that the gas heater in question had been located approximately ten years in its position at the time of the fire; that the fire department was insistent that there could be no drains for gasoline upon the floor for safety precautions, so that if something did drain upon the floor it was either scrubbed up or dried out; that he relied upon the fire department as experts in detecting unsafe conditions from the standpoint of fire hazards; that if the City of Tucson Fire Department had advised him that the gas stove on the floor was not safe in an area where gas was to be drained, he would have taken the heater out; that on at least one occasion the fire department had advised him to take certain safety measures regarding trash accumulation prior to the fire in question, which measures he did take; that he assumed that if the fire department found anything of a dangerous or hazardous nature it would inform him of said condition or conditions; and that after the fire in question the fire department informed him that he could not have a gas heater in the paint room.

The essence of appellants' theory of negligence is that the City violated the City Fire Prevention Code by permitting an open flame heater in the work area, by failing to require Dietz & Sons to have suitable fire detecting devices such as extinguishers, and by permitting ". . . the improper ventilation of the stall where the plaintiff was working."

The City of Tucson has adopted the 1965 edition, with some amendments, of the Uniform Fire Prevention Code. Under Section 1.3 of this Code, fire department personnel are empowered and authorized to enter any building or premises for the purpose of making inspections or investigations. Section 1.4 of the Code makes it the duty of the chief of the fire department to inspect or cause to be inspected all buildings and premises, except the interior of dwellings, as often as necessary for the purpose of ascertaining and causing to be corrected any conditions liable to cause fire, endanger life from fire, or any violations of the provisions or intent of the Code or of any other ordinance affecting the fire hazard.

Section 1.5 of the Uniform Fire Prevention Code provides that whenever members of the fire department making an inspection pursuant to Section 1.4 find in any building or upon any premises dangerous or hazardous conditions or materials which would constitute a fire hazard, they may order the dangerous conditions or materials removed or remedied. The ordinance adopting the Code also provides that any violations may be punishable by imprisonment in the city jail not to exceed six months or by fine not to exceed $300 or both.

 Assuming for the purpose of the motion for summary judgment, the truth of appellants' allegations and statements in deposition, the issue narrows down to whether appellee fire department owed any duty to Mr. Duran. Abrogation of the doctrine of governmental immunity removes the defense of immunity, but does not create any new liability for a municipality. Hoffert v. Owatonna Inn Towne Motel, Inc., 293 Minn. 220, 199 N.W.2d 158 (1972). Even though the doctrine of governmental immunity has been abrogated, the plaintiff, in order to recover against the City must show the breach of a duty owed to him as an individual and not merely the breach of an obligation owed to the general public. Massengill v. Yuma County, 104 Ariz. 518, 456 P.2d 376

(1969); Leger v. Kelley, 19 Conn.Sup. 167, 110 A.2d 635 (1954), aff'd. 142 Conn. 585, 116 A.2d 429 (1955); Modlin v. City of Miami Beach, 201 So.2d 70 (Fla.1967); Hoffert v. Owatonna Inn Towne Motel, Inc., supra; Motyka v. City of Amsterdam, 15 N.Y.2d 134, 256 N.Y.S.2d 595, 204 N.E. 2d 635 (1965).

When does the duty of a public officer extend to the general public only and not to any particular citizen? *Massengill* cites with approval the following from Leger v. Kelley, supra:

> ". . . The failure of a public officer to perform a public duty can constitute an individual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its nonperformance."

We do not find this definition to be especially helpful. The appellate court in City of Tampa v. Davis, 226 So.2d 450 (Fla.App.1969), explains the *Modlin* case and the Florida rule as follows:

> "We conclude, therefore, that in the light of Modlin, a municipality is liable in tort, under the doctrine of respondeat superior, when its agent or employee commits a tort in the performance, or by the nonperformance, of an executive (or administrative) duty within the scope of a governmental function, *only when such tort is committed against one with whom the agent or employee is in privity, or with whom he is dealing or is otherwise in contact in a direct transaction or confrontation."*

■ Although the Florida rule would be a basis for imposing liability upon a governmental body in Arizona, any limitation of liability in Arizona on the basis of the Florida rule would not be applicable in view of Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963). In the *Stone* case liability was imposed for failure to properly maintain the highway and remove old directional signs where a new highway and an old highway inter-

sected, and not upon any theory of direct contact by the employees of the state with the plaintiff or under any theory of privity.

■ Appellants claim that *Massengill* cannot be reconciled with the *Stone* case. We do not agree. *Massengill* was a suit against the county for the failure of one of its deputy sheriffs to arrest a drunk driver driving on the wrong side of the road. *Massengill* held that the duty to arrest was a public duty and not a duty owed to any particular individual. The *Massengill* situation is to be distinguished from certain activities of the government which provide services and facilities for use of the public such as highways, public buildings and the like, in the performance of which the governmental body may be liable under the ordinary principles of tort law. The basis for liability is the provision of the services or facilities for the direct use by members of the public. This is to be contrasted with the provision of a governmental service to protect the public generally from external hazards. *See* Riss v. City of New York, 22 N.Y.2d 579, 293 N.Y.S. 897, 240 N.E.2d 860 (1968).

■ There are other governmental activities which create a duty to the individual rather than a duty to the public generally. Thus, in the execution of governmental functions there are acts performed which have a clear parallel or similarity to acts performed by ordinary citizens for which liability follows, if done by employees in a negligent manner, such as the operation of a motor vehicle. Here the usual rules applicable to actions based on negligence may be applied without variation against the governmental body. This does not hold true where the alleged negligence is predicated on an act which the ordinary citizen would not be called upon to perform.

■ As was pointed out by the court in *Massengill,* there are situations where a government or agency thereof can by its conduct narrow an obligation owed to the general public into a special duty to an in-

dividual for the breach of which it is answerable in damages. An example of such a situation can be found in Schuster v. City of New York, 5 N.Y.2d 75, 180 N.Y. S.2d 265, 154 N.E.2d 534 (1958), where the municipality was held liable for failing to provide police protection to a person who responded to the City's plea for information leading to the apprehension of a nationally sought criminal. In the case of In re M/T Alva Cape, 405 F.2d 962 (2d Cir. 1969), where the fire commissioner of New York City allegedly negligently ordered a certain procedure to be carried out in order to protect the part of New York City against further fire and explosion aboard the ship Alva Cape thereby causing an explosion aboard the ship, the court applied the *Schuster* doctrine stating the "power to command obedience created a reciprocal duty on the part of the Commissioner to exercise due care in the issuance of his order." In *Massengill* the court cites the case of Veach v. City of Phoenix, 102 Ariz. 195, 427 P.2d 335 (1967) as another example of the narrowing of a public duty into an obligation owed specially to an individual.

■ There is no liability to the general public for failure of police or fire protection. Steitz v. City of Beacon, 295 N.Y. 51, 64 N.E.2d 704 (1945); H. R. Moch Co., Inc. v. Rensselaer Water Company, 247 N.Y. 160, 159 N.E. 896 (1928). Appellants counter the general rule by contending that the instant situation is more analogous to the *Schuster* or *Veach* cases in that the public duty had been narrowed to a duty owed to him by virtue of the fact that the City did inspect the premises and having done so, was required to act with due care. This contention is based upon § 323, Restatement of Torts (Second) which provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as

necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

We do not believe that the foregoing section is applicable. It contemplates the *rendering of services* to another. The inspections mandated by the fire code are not a service to the owner or occupier of the premises. Absent statutory intention to the contrary, the duty to enforce statutory law is a duty owed to the public generally, the breach of which is not actionable on behalf of the private person suffering damage. The duty of the City to enforce the statute is similar to the duty to provide adequate police or fire protection. Rivera v. City of Amsterdam, 5 A.D.2d 637, 174 N.Y.S.2d 530 (1958);[1] Motyka v. City of Amsterdam, supra. Both *Rivera* and *Motyka* involved the alleged failure of the municipality to take steps to eliminate or correct a defective stove which caused a fire. Furthermore, any contention that the purpose of the Uniform Fire Code is to protect individual persons and property as opposed to the public generally is met by Section 1.13 of the code itself which provides:

"This code shall not be construed to hold the municipality responsible for any damage to persons or property by reason of the inspection or re-inspection authorized herein or failure to inspect or reinspect or the permit issued as herein provided or by reason of the approval or disapproval of any equipment authorized herein."

■ We believe the Fire Code is analogous to a building code. In fact, protection against explosions and fire constitutes one of the oldest functions of American lo-

---

1. The defense of governmental immunity was waived by New York in 1929 by the enactment of § 12A (now § 8, of the Court of Claim Act), (Bernardine v. City of New York, 294 N.Y. 361, 62 N.E.2d 604 (1945)).

cal government, and the establishment of fire limits were forerunners of modern building regulations. E. McQuillian, The Law of Municipal Corporations § 24.457, p. 448 (1968). In Hoffert v. Owatonna Inn Towne Motel, Inc., supra, involving a negligent building inspection, the court held that a building inspector acts exclusively for the benefit of the public, that the act performed is only for public benefit, and that an individual who is injured by the alleged negligent performance of a building inspector does not have a cause of action.

It is clear that the appellees' duty to enforce the Fire Prevention Code was a duty owed to the public and not a duty owed to appellant-husband individually.

Affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.