## Solomos v. SEPTA

*Stanley J. Sinowitz*, for defendant.
*Michael DiEiss*, for additional defendant.

HILL, *J.*, January 6, 1981—On May 14, 1980 plaintiff filed a complaint in trespass against defendant, Southeastern Pennsylvania Transportation Authority (SEPTA), for injuries allegedly sustained as a result of an attack against him on February 4, 1980 in an underground subway station operated by SEPTA at the Susquehanna Avenue stop on the Broad Street line.

On July 11, 1980 SEPTA joined City of Philadelphia (city) as an additional defendant by filing a complaint against city which averred that, if plaintiff's accident occurred as alleged, city was in control of the area of the accident by virtue of the lease agreement between SEPTA and city. SEPTA stated that city was, therefore, negligent and responsible for the accident because of its failure to provide adequate security and police protection.

City filed preliminary objections to SEPTA's complaint on September 22, 1980 in the nature of a demurrer pursuant to Pa.R.C.P. 1017(b)(4). City

188

claims that neither a municipality nor its employees can be held liable for failure to supply general police protection.

The doctrine of governmental immunity was abolished in Pennsylvania by the decision in Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 305 A. 2d 877 (1973), and municipalities were thereby exposed to tort liability. However, it is elementary that before liability can be imposed upon city for failure to provide adequate police security at the place of plaintiff's accident, it must be determined whether city owed any duty to plaintiff.

In this regard, it is well settled as a basic rule that, independent of any concept of immunity to suit, a municipality is not liable for its failure to protect the general public against criminal acts: Turner v. United States, 248 U.S. 354, 39 S. Ct. 109, 63 L. Ed. 291 (1919); Reiff v. City of Philadelphia, C. P. April Term, 1976, No. 4591, aff'd, Superior Court, October Term, 1977, No. 1623; Jahnke v. Incorporated City of Des Moines, 191 N.W. 2d 780 (Sup. Ct. Iowa, 1971); Huey v. Town of Cicero, 41 Ill. 2d 361, 243 N.E. 2d 214 (1968); Motoyka v. City of Amsterdam, 15 N.Y. 2d 134, 204 N.E. 2d 635, 256 N.Y.S. 2d 595 (1965). Moreover, it is equally clear that an exception to this general rule results only when a municipality is found to owe a special duty to a particular individual or class of individuals: Gardner v. Village of Chicago Ridge, 71 Ill. App. 2d 373, 219 N.E. 2d 147 (1966); Schuster v. City of New York, 5 N.Y. 2d 75, 154 N.E. 2d 534, 180 N.Y.S. 2d 265 (1958).

In the instant case, SEPTA, in its answer to city's preliminary objections, asserts that city has indeed expressly assumed a special duty to provide police protection for SEPTA passengers while on SEPTA

property. Such a contention is based upon a provision in the lease agreement between SEPTA and city which states: "Nothing herein contained shall prevent the City from exercising its police power to maintain the peace or prevent or suppress crime, riot, or disorder, or from extinguishing fires anywhere in the Leased Properties." Section 1.19 (City Police Power).

It is readily apparent that SEPTA's argument is misguided. In no way can the above quoted provision be interpreted to impose upon City an affirmative duty to protect SEPTA riders. This clause represents, quite simply, a reservation on the part of city of its right to exercise its police powers on the leased properties in the transit system: Lucas v. City of Philadelphia, 1 Phila. 306 (1978). To construe the clause in any other manner is to ignore the plain language of the provision.

The conclusion that no special relationship exists between city and plaintiff which would impose a special duty of protection is further evidenced by the contrast between the case at bar and cases finding such a special duty of protection. For example, in Gardner v. Village of Chicago Ridge, supra, it was held that a privileged relationship requiring police protection existed when the police called plaintiff to the scene of the arrest of his assailants to make an identification. Also, in Schuster v. City of New York, supra, a special duty of protection was said to be owed to a private citizen who had aided in the apprehension of a known criminal and who had requested police protection when threats were made upon his life as the result of his assistance. The circumstances of the instant case are markedly different from these cases and afford no indication that city has assumed any special duty of police

protection. Consequently, city cannot be held liable for its failure to provide police protection to plaintiff.

Finally, it should be noted that, in the absence of an existing theory of tort liability, any decision to impose upon city a new duty of police protection of SEPTA riders is a decision properly left to the legislature. To make city subject to claims from victims of crimes in the transit system is to alter the parameters of tort liability significantly. To allow liability in these circumstances would, in effect, make city an insurer against the criminal wrongdoings of third parties and would result in considerable expense for city. Any such determination, necessarily involving the allocation of city's funds and of city's police resources, demands the attention of the legislature and precludes judicial innovation in the law of tort.

Accordingly, in the case at bar, city's preliminary objections in the nature of a demurrer are sustained because the law does not permit recovery by plaintiff against city. See Gekas v. Shapp, 469 Pa. 1, 364 A. 2d 691 (1976). SEPTA's complaint against city must be dismissed because city cannot be held liable for failure to supply adequate police protection absent any special duty of protection. In the absence of any special duty of protection imposed on city by the state legislature to do this, there was no special duty of protection owed by city in the instant case.

## ORDER

And now, January 6, 1981, upon consideration of the preliminary objections of additional defendant, City of Philadelphia, to defendant's complaint, and of defendant's answer thereto, and of all supporting

memoranda of law, it is hereby ordered and decreed that said preliminary objections are sustained. Defendant's complaint against City of Philadelphia is hereby dismissed.