OPINION OF THE COURT
David B. Saxe, J.
On December 31, 1982, in the evening, the FALN, a terror *720 ist organization, placed a bomb at the F.B.I. headquarters at 26 Federal Plaza in Manhattan. Within minutes after it exploded, the commanding officer at the nearby police headquarters, Sergeant Cashman, ordered one of the new members of the police headquarters security unit, Officer Rocco Pascarella, to search the perimeters of the building for suspicious items. Following orders, he took a flashlight and began a search and observed a discarded Kentucky Fried Chicken box strewn among other debris in an alley adjacent to the building. As Officer Pascarella approached the box, it exploded with a force that blew off his lower leg and caused him permanent and partial loss of his hearing and eyesight.
Officer Pascarella has sued the City of New York (City) as a result of this accident claiming that he had little or no experience in bomb detection, had spent most of his 12-year career in the traffic control unit of the police department and that just 10 days prior to being sent out to conduct this search he had arrived at One Police Plaza as a new member of the building’s own internal security unit. It was claimed that not only did Officer Pascarella have virtually no training in the detection of or knowledge of sophisticated explosives but that he was even unfamiliar with the physical layout of police headquarters.
At the close of the plaintiff’s case the defendant City of New York moved to dismiss the complaint stating that as a matter of law no cause of action could be asserted against it and as a matter of fact that its conduct through its employees was not negligent. The City asserted that there were three grounds for dismissal: first, that the direction to Officer Pascarella to conduct a perimeter search was an exercise of governmental discretion which is not legally actionable even if perfect judgment was not exercised; second, that it is established law that a municipality’s failure to provide protection to members of the general public or in this instance to Officer Pascarella is not legally actionable unless a special relationship arises. Here, the defendant claimed that plaintiff was merely performing his duties and that no special relationship existed to warrant consideration of this case by the jury. And, third, that the acts of negligence claimed to have occurred were not the proximate cause of the plaintiff’s injuries.
In response, the plaintiff argued (a) that a special duty was established between Officer Pascarella and the police department; (b) that the municipality cannot hide behind the doctrine of sovereign immunity where, as here, it acted in a *721 proprietary function as a landowner with a duty to maintain its property in a reasonably safe manner; and (c) that the plaintiffs injuries were proximately caused by these acts of negligence.
I denied defendant’s motion to dismiss and the case was allowed to go the jury. They returned a verdict for the plaintiff in the sum of $1,750,000.
The defendant City of New York has now moved to set aside this verdict pursuant to CPLR 4404 (a) as contrary to the weight of the credible evidence and as a matter of law directing judgment notwithstanding the verdict.
To direct a judgment in favor of the defendant the court must consider its denial of defendant’s motion to dismiss made after the close of the plaintiff’s case. At that point, the significant issue and analysis was primarily focused on the claim that the police department could not be held liable for failing to protect the plaintiff from the harm of the FALN terrorist group.
As the defendant has stated, lacking any explicit legislative intention a governmental entity has no duty to protect specific individuals from the criminal acts of third persons if that governmental entity is acting within its governmental capacity. (Moch Co. v Rensselaer Water Co., 247 NY 160 [1928]; Steitz v City of Beacon, 295 NY 51 [1945].) This principle of immunity is one of policy and was explained by Judge Breitel in Riss v City of New York (22 NY2d 579, 581-582 [1968]): "The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed. For the courts to proclaim a new and general duty of protection in the law of tort, even to those who may be the particular seekers of protection based on specific hazards, could and would inevitably determine how the limited police resources of the community should be allocated and without predictable limits.”
However, plaintiff asserts that there are instances where the principle of immunity does not apply. Under certain circumstances a special relationship may be created between the municipality and the injured party. Thus, even if as plaintiff concedes Sergeant Cashman’s directive to conduct a search was a governmental decision, it is still actionable because a special relationship arose between himself and the New York City Police Department.
*722 In this regard, when a governmental body is acting within a traditionally governmental function, an injured party may recover for injuries caused by the criminal acts of third parties if that party can establish the existence of a special relationship between the injured party and the government which then imposes a duty on the government (as when the government assumes an obligation to protect an individual from a specific danger); and secondly, that the individual can establish reliance on the performance of that duty to his detriment. (Schuster v City of New York, 5 NY2d 75 [1958]; De Long v County of Erie, 60 NY2d 296 [1983].)
The plaintiff points to a manual entitled, Functional Guide for the Fire Security Officers and Deputy Fire Security Officers. This guide was produced by Lieutenant Thomas V. Reilly, commanding officer of the headquarters security unit (HSU). Its stated purpose was to specify "search procedures in the event of a bomb threat”, and emphasized the "optimum consideration toward the safety of our employees”. In addition, this guide stated that: "A practical and effective approach to a bomb threat is to have the building searched by personnel familiar with the specific areas to be searched”. Further, the guide directed that in such a situation, the fire safety director request an emergency services unit, which is conceded by all parties to be better equipped to handle bomb threats than the HSU. Finally, it also directed that: "In the event of a 'Bomb Threat’ * * * or if any unusual circumstances dictates, additional personnel shall be requested for perimeter patrol from the Fifth Precinct” (emphasis added).
The plaintiff claimed that the existence of this manual with its specific procedures for bomb threat situations imposed on Sergeant Cashman the duty to abide by them since it gave Officer Pascarella the assurance that he could depend on his superiors to follow them as well.
The defendant points to the authority of Vitale v City of New York (60 NY2d 861 [1983]). In Vitale, a public school teacher was injured while he tried to break up a student altercation. The Court of Appeals found that no special relationship was created between the teacher and the Board of Education as a result of the school’s adoption of a security plan. The court held that since nothing in the plan indicated that the guidelines were specifically designed for the benefit of the plaintiff, no special relationship existed (at 863).
The same principle has also been true of police officers and *723 firefighters injured in the line of duty. Thus, a decedent’s wife could not recover from the city when her firefighter husband was killed in a burning building which collapsed. (McGee v Adams Paper & Twine Co., 26 AD2d 186, affd 20 NY2d 921 [1967].) Similarly, a court has held that a municipality owed no special duty to a police officer for his injuries caused by a man on a shooting spree known to the police for his " 'dangerous and vicious propensities’ ” (Satiro v City of New Rochelle, 102 AD2d 821 [1984]).
In Weiner v Metropolitan Tr. Auth. (55 NY2d 175 [1982]) the court held that the fact that the Transit Authority police had received several reports of muggings and assaults occurring in a specific area, and thus had general knowledge of the danger in that area, was not enough to create a special relationship between the Transit Authority police and an individual who was mugged. And in O’Connor v City of New York (58 NY2d 184 [1983]) the court held that the City cannot be held liable due to omissions by its Buildings Department inspector for injuries caused by a gas explosion since gas pipe regulations benefit all members of the public but do not create a special duty to plaintiffs as individuals.
Thus, courts do not easily find that a special relationship or duty is created. Even when a governmental body is aware of the possibility of injury, that knowledge alone will still not create a special relationship necessary to impose a duty of protection. (Riss v City of New York, supra.) In Riss, for example, a woman plaintiff was tormented by a rejected suitor for a period of over six months. Eventually, the suitor threw lye in her face. Even though the plaintiff had repeatedly complained to authorities throughout the prior six-month period, the Court of Appeals affirmed the lower courts’ dismissal of her complaint against the municipality.
However, as noted by the plaintiff, there have been cases where a fact pattern gives rise to an actionable claim. What emerges from these "special duty” cases is the requirement that first the facts establish that the municipality acted in some special way to protect a particular person. Once that is found, then the courts have imposed upon the municipality the duty to take some action to protect that person. This is just what occurred in Schuster v City of New York (5 NY2d 75 [1958], supra), where plaintiff, a police informer with a high media profile was active in assisting the police in making arrests and prosecuting criminals. Although Schuster had reported death threats made to him to the police, the police *724 ignored them and Schuster was murdered. Under these circumstances, the court found that the failure to protect him was a breach of duty. (Schuster v City of New York, supra, at 82.)
Following Schuster (supra), in Florence v Goldberg (44 NY2d 189 [1978]) the court relied on the municipality’s own written procedures as a basis for finding that a special duty was created between the plaintiff child and the municipality. The court held that the municipality was liable for injuries that a child sustained when struck by a car due to the municipality’s failure to provide a crossing guard as required by local police regulations. The court found that these regulations were intended for a "special class of persons” who would benefit from the crossing guard. The special class of persons were "children crossing designated intersections while traveling to and from school at scheduled times” (Florence v Goldberg, supra, at 196-197).
And more recently, the court in De Long v County of Erie (60 NY2d 296 [1983], supra) found a special relationship was created when a woman dialed the 911 emergency number to report that a burglar was trying to break into her home. The operator did not report the address properly and the police were unable to respond. Over 10 minutes after the call, the woman was seen running from her house with stab wounds from which she subsequently died. Finding that she had relied on the municipality’s duty to respond to her call, the court sustained a liability determination (De Long v County of Erie, supra, at 306; see also, Merced v City of New York, NYLJ, Mar. 13, 1987, at 13, col 2 [once a 911 emergency call is made the police have access to the source of the call and a special relationship has been created which imposes a duty on police officers to investigate and not to accept a neighbor’s claim that the ruckus is merely a family dispute]).
And, in Bloom, v City of New York (124 AD2d 594, 595 [2d Dept 1986]), it was held that where a public school teacher seeks the assistance of a school security guard to break up a fight between students and the guard simply stands by as the teacher is assaulted by one of the students, a special relationship is created which establishes a duty on the part of the security guard to protect the teacher.
Based on the evidence presented by plaintiff and an analysis of the special duty exception, I concluded that a special relationship existed between Officer Pascarella and the police department. The facts here are distinguishable from those in *725 Vitale (supra), for unlike the security plan in Vitale, the Functional Guide for Security Officers at Headquarters Security Unit, was written by two former heads of that security unit and were designed specifically for the protection of the officers in that unit. The security plan in Vitale was specifically characterized by the court as a general plan designed for the benefit of the general public on school grounds. In this sense, the Functional Guide was more akin to the written regulations regarding school crossing guards in Florence v Goldberg (supra), the breach of which the court there said was actionable.
Moreover, the Functional Guide contained specific procedures to be followed in the context of an emergency situation which occurred on the night when Officer Pascarella was injured. The police department was therefore obligated to follow the procedures which it had promulgated for the benefit of a specific group of persons a member of which was Officer Pascarella.
It is also clear that Officer Pascarella relied on this special duty to his detriment. He was untrained in bomb search procedures and was sent on a perimeter search by Sergeant Cashman even though he had less than 10 days’ experience in the HSU, directly contradicting the search procedures in the Functional Guide which stated that: "A practical and effective approach to a bomb threat is to have the building searched by personnel familiar with the specific areas to be searched”.
The plaintiff also established that the "unusual circumstances” were present for additional personnel to be requested from the Fifth Precinct as required by the guidelines. The officers of the Fifth Precinct were better equipped and trained to conduct such a search than the officers of the HSU. Even though a bomb had just exploded minutes before and even though Sergeant Cashman was aware of the possible impending danger, he did not follow this guideline.
Accordingly, I found that the defendant owed a special duty to protect Officer Pascarella based on procedures designed specifically for his safety. The fact that the plaintiff is a police officer, a naturally hazardous occupation, is of no consequence; the duty nevertheless existed.
The issue of whether this duty was breached is one for the jury (Florence v Goldberg, supra, at 197) and was considered by them. That branch of defendant’s motion to dismiss was therefore denied.
*726 THE PROPRIETARY FUNCTION CLAIM
Plaintiff also raised the alternative claim that the defendant was acting in its proprietary function and that regardless of whether the defendant owed a special duty to the plaintiff, as a landowner, it could be held liable for damages sustained by the plaintiff.
To support this claim, plaintiff relied principally on Rubino v City of New York (114 AD2d 243 [1st Dept 1986]). In Rubino, the plaintiff, a teacher, brought an action to recover for injuries she sustained when struck by a metal object which was thrown from a neighboring building into the school yard. Officials, including an assistant principal, were aware that objects had been thrown into the school yard creating a dangerous situation. At one point, the assistant principal directed teachers not to use the yard. This directive however was not enforced. The plaintiff who taught at that school only two days per week had no knowledge of the danger nor had she been given any warning or notice by the teacher in charge regarding this condition.
The court in Rubino (supra, at 248-249) held that the plaintiff had established sufficient proof to establish that defendant acted negligently in its proprietary function as a landlord: "Having knowledge of the hazardous condition caused by foreign objects and debris being periodically hurled into its school yard from the adjacent properties, the defendant, as any landlord, was under a duty to take such steps in the management of its property as were reasonably necessary to prevent injuries to teachers and students from foreseeable dangers.”
Similarly, in Miller v State of New York (62 NY2d 506, 511), the Court of Appeals enunciated the exception to the longstanding principle of governmental immunity: "[W]hen the State acts in a proprietary capacity as a landlord, it is subject to the same principles of tort law as is a private landlord” (quoted in Rubino v City of New York, supra, at 247; also see, Waters v New York City Hous. Auth., 69 NY2d 225 [1987]). So, the initial inquiry is whether on these facts the defendant acted in its proprietary rather than governmental capacity.
Based on the facts at trial, I concluded that the defendant was clearly charged with the duty to maintain its property so as to keep it in a reasonably safe condition. During the plaintiff’s case, Sergeant Cashman testified that he was aware that debris would sometimes collect around certain areas and *727 alleyways of One Police Plaza. Further, he stated that he was aware that One Police Plaza was a potential bombsite for terrorist groups. Still, aware of those dangerous circumstances and the possible harm that might happen to officers under his command, he sent the plaintiff out to conduct a perimeter check. Sergeant Cashman had the authority to avoid this risk with no greater burden than by contacting officers of the Fifth Precinct or members of the emergency services unit. He did not.
As such, I concluded that the plaintiff had presented sufficient evidence on either of the above-stated theories to defeat the motion to dismiss. The defendant’s motion was denied and the case was sent to the jury with instructions on both theories of law.
As to that part of the motion which challenges the verdict as being contrary to the weight of the credible evidence a Trial Judge will set aside a verdict only if it is too low, or too high or so wrong that it will not stand. A verdict will not be disturbed simply because the court dislikes the verdict or feels it would have decided differently. (Mann v Hunt, 283 App Div 140 [1953].)
In this case, the jury deliberated for a reasonable amount of time and returned with an award of $1,750,000.1 find both the verdict and the award reasonable in view of the testimony at trial and the plaintiff’s injuries. Accordingly, defendant’s motion to set aside the verdict is denied.