■ THOMAS O'BRIEN et al., Respondents, v CARVEN ASSOCIATES, INC., et al., Respondents; CITY OF NEW YORK, Appellant, and AMERICAN PECCO CORP., Defendant and Third-Party Plaintiff-Respondent. NORTHBERRY CONCRETE CORP., Third-Party Defendant-Respondent.—In three consolidated actions to recover damages for personal injuries, etc., the defendant City of New York appeals from an order of the Supreme Court, Orange County (Green, J.), dated June 22, 1987, which denied its motion, *inter alia,* for summary judgment, or, alternatively, to dismiss the complaint, third-party complaints, and all cross claims against it, pursuant to CPLR 3211 (a) (7) for failure to state a cause of action.

Ordered that the order is reversed, on the law, that branch of the motion which was for summary judgment is granted, and the complaint, third-party complaints and all cross claims as against the City of New York are dismissed in the three consolidated actions, with one bill of costs payable by the respondents appearing separately and filing separate briefs.

The plaintiffs, Thomas and Ethel O'Brien, commenced this suit to recover damages for serious injuries sustained by Thomas O'Brien (hereinafter the plaintiff) when a crawler crane he was operating toppled in a construction site accident. On September 8, 1984, the plaintiff, an employee of the third-party defendant Northberry Concrete Corp. (hereinafter Northberry), was required to use the crawler crane to hoist a turntable of a tower crane and to install it on top of a steel tower at the construction site. The tower crane had been leased to Northberry by its owner and manufacturer, the defendant American Pecco Corp. (hereinafter Pecco). Northberry employed the defendant Delro Industries, Inc., a company in the business of hoisting and rigging, to install the

tower crane. Present at the site at the time of the accident were Mr. Werner Gufler, Pecco's technical representative; Mr. Terence McCabe, a master rigger employed by Delro; and Inspector Anthony Straface of the New York City Department of Buildings.

Prior to carrying out the lift, the plaintiff, who appeared to be concerned about the weight of the turntable and its accessories, allegedly conveyed to the above-mentioned persons that the maximum lifting capacity of the crawler crane was 40,000 pounds, and that he did not want to lift anything weighing more than 39,000 pounds. The plaintiff was allegedly told by all three persons that the weight of the lift was 37,500 pounds. Thereafter, the plaintiff again asked Inspector Straface what the weight of the lift was, to which the latter allegedly replied "Tom, what you have here is between 37,000 and 39,000, that is my information." Immediately prior to making the lift, McCabe and Gufler inspected the load chart of the crawler crane and again confirmed the weight of the lift to the plaintiff by giving him an "OK finger signal". Immediately thereafter, Inspector Straface, who was standing with the two other men, nodded. The crawler crane toppled during the lift, causing severe injuries to the plaintiff, including amputation of his right leg and his left index finger. The cause of the accident was determined to be the "load and reach which together overloaded the safe operating capacity [of the crawler crane] by more than one-third." The load was found to have actually weighed 52,480 pounds. The steel platform foundation installed for the crawler crane was found to have been out of level by eight inches thereby reducing the crane's lifting capability by 1.6%. Moreover, one of the crane's load sensors was found to have been inoperable, while the other was reporting a "15% low reading".

The third cause of action in the complaint alleged negligence on the part of Inspector Straface in failing to ascertain the weight of the load, in conveying inaccurate figures to the plaintiff and in failing to make sure that the steel platform foundation for the crawler crane was level. The plaintiff further alleged that Inspector Straface's involvement in the lift operation established a special relationship between him and the city. He also claimed that the City breached a duty owed to him by not enforcing violations of certain provisions of the New York City Administrative Code relating to hoisting and rigging. We disagree with the plaintiff's contentions.

As a general rule a municipality cannot be held liable for failure to perform a general protective governmental function,

except where a special relationship exists between the injured claimant and the municipality *(Florence v Goldberg,* 44 NY2d 189; *Schuster v City of New York,* 5 NY2d 75). A special relationship may be established where the municipality, by direct contact with the person who was injured, voluntarily assumed an affirmative duty, through promises or actions, to act on behalf of the party who was injured and where that party justifiably relied on the municipality's affirmative undertaking. There must also have been knowledge on the part of the municipality's agents that their failure to act could lead to harm *(Cuffy v City of New York,* 69 NY2d 255).

At bar, there is no indication that Inspector Straface assumed a special duty of protection towards the plaintiff. The weight of the load was directly communicated to the plaintiff by McCabe and Gufler. Indeed, Inspector Straface's alleged statement that "what you have here is between 37,000 to 39,000, that is my information", should have reasonably conveyed to the plaintiff that Straface was merely conveying secondhand information, since he did not represent that he had personally ascertained the weight of the load. The plaintiff concedes that Inspector Straface nodded only after McCabe and Gufler had made the "OK finger signal". Thus, upon no view of the facts can it be concluded that triable issues of fact exist as to whether or not Inspector Straface voluntarily assumed a duty regarding the weight of the lift.

Furthermore, the fact that the plaintiff made inquiry concerning the weight of the load from various persons shows that he did not rely on any assurances which may have been made by Inspector Straface. In fact there was no showing that but for Inspector Straface's involvement, the plaintiff would not have undertaken the lift. Thus, the element of reliance is lacking *(see, Helman v County of Warren,* 111 AD2d 560).

Finally, the failure of the city to enforce certain provisions of the Administrative Code does not give rise to liability since the enforcement of those provisions inure to the benefit of the public at large. Administrative Code of the City of New York former § C26-1909.1, now § 27-1054 provides that "[m]aterial handling and hoisting equipment shall be installed, operated, and maintained to eliminate hazard to the public or to property". Thus, the city did not thereby assume a special duty of protection towards the plaintiff. Mangano, J. P., Thompson, Kunzeman and Eiber, JJ., concur.