OPINION OP THE COURT
John Milano, J.
After trial, both sides having rested, the defendant City of New York moves for directed verdict in its favor dismissing the plaintiffs complaint in its entirety on the grounds that the plaintiff has failed to make out a prima facie case at the close of the plaintiffs case, and moves further for a directed verdict and for dismissal of the plaintiffs case in its entirety for failure to sustain the plaintiffs burden of proof as to the fair preponderance of the evidence in the case and as to the sufficiency of the evidence. Involving very sympathetic circumstances, this is a wrongful death and personal injury action arising from a shooting which occurred on October 4th, 1987, at Big D’s Car Service, 150-01 Linden Boulevard in Queens County.
The complaint in essence alleged the City of New York’s negligence arising from a special relationship in failing to protect Mildred Greene from a phone threat following her testimony at Grand Jury proceedings. The two causes of action alleged in the complaint are for wrongful death and conscious pain and suffering.
Prior to the assignment of this case to this Trial Term, the defendant City of New York sought an order granting summary judgment dismissing the complaint pursuant to CPLR 3211 (a) (7) and 3212. The court hearing the motion found that the plaintiffs complaint sufficiently alleged the existence of a special relationship and defendant’s alleged negligence in failing to inform Mildred Greene of the threat and to provide continued police protection.
The court went further and stated that a special relationship existed between Mildred Greene and the municipality, relying on Schuster v City of New York (5 NY2d 75), which was a case cited by the Court of Appeals in Cuffy v City of New York (69 NY2d 255, 260).
Plaintiffs counsel argues that the said decision on the motion regarding the sufficiency of the complaint establishes as the law of the case a special relationship. This trial court does not agree. The city’s motion to the motion court pursuant to CPLR 3212 (a) alleged that the city should prevail on the merits as set forth in the verified complaint, verified answer *792 and arguments contained in the motion papers and accordingly, that the complaint should be dismissed.
The city’s alternative prayer for relief pursuant to CPLR 3211 (a) (7) is that plaintiffs complaint should be dismissed for failure to state a cause of action. The order of the motion court which denied the city’s motion to strike was predicated upon a review of the verified complaint, verified answer and the arguments of counsel as contained in their motion papers and the exhibits thereto.
After review thereof, the motion court found that the plaintiff had raised sufficient factual issues as to the existence of a special relationship between the decedent and the city to afford the plaintiff her day in court and to defeat the city’s motion to dismiss the complaint.
This trial court rejects the contention of plaintiff’s counsel that the motion court’s finding as to special relationship can be construed as the law of the case. The motion court did not have sufficient evidence before it to make a dispositive finding as to the existence of a special relationship which would be binding on the trial court.
This court conducted a full and extensive trial which included testimony of seven necessary and proper witnesses, exhibits, documents, memoranda of law, several lengthy oral arguments of law on the record, a videotape of one of the killers of Mildred Greene and Grand Jury testimony of Mildred Greene.
The witnesses included Frank Favors, the owner of Big D’s Car Service, who learned of the threat to Mildred Greene, Joseph Libertelli, retired police officer, Adrienne Greene, the daughter of the decedent, and plaintiff herein, Philip Kamaras, former Assistant District Attorney, John McCann, retired detective of the 113th Police Precinct, George Spence, retired police officer, who took the call of Frank Favors in regard to the threat, and Police Officer Vincent Manta.
Not having the benefit of all of this evidence, the motion court could not make a finding which is binding on the trial court. Rather, this court holds that any finding of the motion court as to a special relationship is limited only to a finding that plaintiff did make allegations thereof sufficient to defeat the city’s motion to dismiss the complaint. And in denying the City of New York summary judgment, the motion court did not bind this trial court to submit this lawsuit to a jury.
"A denial of motion for summary judgment is not necessar *793 ily res judicata or the law of the case that there is an issue of fact in the case that will be established at the trial” (Sackman-Gilliland Corp. v Senator Holding Corp., 43 AD2d 948, 949 [2d Dept 1974]). A denial of a motion for summary judgment is res judicata of nothing except that summary judgment was not warranted. The denial does not preclude the Trial Judge on whatever evidence develops at the trial from either directing a verdict or granting judgment notwithstanding the verdict.
But aside from the doctrines of case law and res judicata, this court is now confronted with the doctrine of stare decisis. It is called upon to determine whether to apply a precedent from an earlier case to a legal issue in a later one. From what court does the precedent come? When was it decided? Have there been intervening changes in the law itself, from statute or later case law or from changing times and diverging attitudes?
This court ponders whether it is to be constrained by the Court of Appeals decision in Cuffy v City of New York (69 NY2d 255, supra) which was decided in February 1987 prior to the Greene occurrence and 29 years after the Schuster decision (supra) upon which the plaintiff relies in attempting to make out its case.
In Cuffy v City of New York (supra, at 258), Court of Appeals Judge Vito Titone, rendering the unanimous opinion of the court, stated that in the line of cases culminating in Sorichetti v City of New York (65 NY2d 461 [1985]), the court recognized a narrow right to recover from a municipality for its negligent failure to provide police protection where a promise of protection was made to a particular citizen and as a consequence, a special duty to that citizen arose.
Essential to recovery is proof that the plaintiff relied on the promise and that his reliance was causally related to the harm he or she suffered.
Accordingly, in an action against the defendant City of New York alleging that the police had a special duty to protect plaintiffs, Eleanor Cuffy and her sons, Cyril and Ralston, because of the promise of protection made to Eleanor’s husband by a police lieutenant on the night preceding a fight between the Cuffys and their tenants, Eleanor’s and Cyril’s claims for damages for personal injuries sustained in the fight should have been dismissed.
Eleanor and Cyril Cuffy’s recovery was precluded for the *794 reason that, as a matter of law, their injuries could not have been deemed to be the result of their justifiable reliance on the assurances of police protection that Eleanor’s husband had received.
Although both Eleanor and Cyril knew or should have known by midday on the day of the fight that the promised police action would not be forthcoming, they remained in their house hours after any further reliance on the lieutenant’s assurances of protection could reasonably be deemed justified. It was this continued presence in their house and the consequent continual exposure to danger that ultimately led to their participation in the melee.
Thus, those plaintiffs’ justifiable reliance which had dissipated by midday was not causally related to their involvement in the imbroglio.
As it was made clear in Yearwood v Town of Brighton (101 AD2d 498, affd 64 NY2d 667), the injured party’s reliance is as critical in establishing the existence of a special relationship as is the municipality’s voluntary affirmative undertaking of a duty to act.
"Indeed, at the heart of most of these 'special duty’ cases, is the unfairness that the courts have perceived in precluding recovery when a municipality’s voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other available avenues of protection (see, De Long v County of Erie [60 NY2d 296], supra, p 305; Florence v Goldberg [44 NY2d 189], supra, p 197).” (Cuffy v City of New York, supra, at 261.)
Cuffy (supra, at 260) mentions and cites Schuster (supra) in regard to that narrow class of cases in which the court has recognized an exception to the general rule and has upheld tort claims based upon a special relationship between the municipality and the claimant. The Court of Appeals in Cuffy defined the elements of this special relationship as follows: (1) An assumption by the municipality through promises or reactions of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality’s agents that inaction could lead them to harm; (3) some form of direct contact between the municipality’s agents and the injured party; (4) that party’s justifiable reliance on the municipality’s affirmative undertaking.
Plaintiff in the Greene case (supra) at trial failed to prove *795 an assumption by the municipality through promises or actions of an affirmative duty to act on behalf of the party who was regrettably and unfortunately murdered. And, in fact, in plaintiffs trial memorandum of law, plaintiffs counsel states at page 8: "I would agree that there is no such evidence and instead, contending that City of New York owed an active, continuing obligation to Mildred Greene to provide her with police protection once — and I emphasize the word 'once’ — they learned about the threat on her life. There was some evidence tending to show some knowledge on the part of the municipality’s agents that inaction could lead to harm.”
However, there was no direct contact between Police Officer George Spence or any other agents of the municipality and Mildred Greene, nor was there any justifiable reliance since there was no affirmative undertaking by the municipality, and Mildred Greene, after hearing of the threat which was conveyed to her by Frank Favors, her boss, after he had heard it from one Shannel Reid, to whom it had been communicated, never communicated with the police, nor did she request or demand any police protection and continued to remain at her business post even though her employer suggested she leave and then returned on the next early morning shift and unfortunately and tragically was murdered.
Schuster v City of New York (5 NY2d 75, supra) concerned an appeal from a judgment of the Appellate Division of the Supreme Court, Second Judicial Department, entered July 18th, 1955 affirming, by a divided court, a judgment of the Supreme Court entered in Kings County upon an order of the court at Special Term granting a motion by defendant for an order dismissing the complaint.
In this four-to-three decision (Chief Judge Conway, Judges Desmond and Froessel dissenting), the majority reversed the judgment and denied defendant’s motion to dismiss the complaint.
The complaint in Schuster (supra) was drawn on the theory that Schuster was shot in consequence of the information about Sutton supplied by Schuster to the police and that the City of New York owed a special duty under the circumstances alleged to protect persons who have thus cooperated in law enforcement.
It was alleged that the city failed to exercise reasonable care in supplying Schuster with police protection upon demand; that Schuster’s death was due to negligence of the city *796 in recklessly exposing him to danger in advising him that the threats upon his life were not seriously made; in failing to supply him with a bodyguard and in heedlessly imparting to him a false impression of safety and lack of danger; that Willie Sutton was a notorious and dangerous criminal at large associated with persons having a reputation of violence and likely to seek revenge against any person instrumental in his identification and apprehension; that the plaintiff’s intestate, a law-abiding citizen with no reason to anticipate harm from any source, conveyed information to the respondent resulting in the apprehension of Willie Sutton; that the role of plaintiff’s intestate was publicized with the knowledge and cooperation of the respondent and publicly confirmed by the respondent’s assumption of partial protection of plaintiff’s intestate.
The protection initially consisted of a limited and partial protection of the place of business and home of Schuster and his family, but the police department failed to continue such protection even though Schuster had demanded same and had relied on the action of the police and had been lulled into a false sense of security.
But in Schuster (supra), unlike in Greene (supra), Schuster supplied information to the police department leading to the arrest of a dangerous fugitive. He immediately received communications threatening his life and he notified the police about them. He demanded police protection. The city assumed an obligation by rendering partial protection of the plaintiff’s home and business which was later withdrawn and not continued.
It therefore is apparent that the facts in the Schuster case (supra) conform to the four-prong requirement of Cuffy v City of New York (69 NY2d 255, supra): assumption of an obligation by the municipality through action, even though partial and limited; knowledge that inaction could lead to harm; direct contact; and justifiable reliance.
"When one considers the greatly increased amount of crime throughout the cities, but especially in certain portions of them, with a repetitive and predictable pattern, it is easy to see the consequences of fixing municipal liability upon a showing of probable need for and request for protection * * * To foist a presumed cure for these problems by judicial innovation of a new kind of liability in tort would be foolhardy indeed and an assumption of judicial wisdom and power not possessed by the courts * * *
"For all of these reasons, there is no warrant in judicial *797 tradition or in the proper allocation of the powers of government for the courts, in the absence of legislation, to carve out an area of tort liability for police protection to members of the public. Quite distinguishable, of course, is the situation where the police authorities undertake [meaning assume] responsibilities to particular members of the public and expose them, without adequate protection, to the risks which then materialize into actual losses (Schuster v City of New York, 5 N Y 2d 75).” (Riss v City of New York, 22 NY2d 579, 582-583.)
Plaintiff contends that Mildred Greene’s status as a Grand Jury witness implicitly entitled her to an affirmative undertaking by the police department to provide her protection. But there is no evidence presented at trial that the police undertook or assumed responsibility in providing protection to Mildred Greene.
Detective George Spence, who received the call from Frank Favors, informing the police that threats had been received at the car service, had no personal knowledge that any police protection was afforded.
Further, Frank Favors did not ask for police protection and did not see any police activity about the area in the morning hours that he stayed with Mildred Greene after having called Detective George Spence. There was no direct contact with the police by Mildred Greene. She never called the police after being told by Frank Favors of the threats.
There is no proof of any justifiable reliance by Mildred Greene on any affirmative undertaking of police protection. Nor is there any proof that Mildred Greene was lulled into a false sense of security so as to induce her to relax her own vigilance or to forego other available avenues of protection. (See, De Long v County of Erie, 60 NY2d 296 [1983], supra.) When Frank Favors informed Mildred Greene of the threat that had been received, her reaction was that she feared nobody because she didn’t say anything at the Grand Jury.
Accordingly, and with great reluctance, because I have been in sympathy with the plaintiff Adrienne Greene, as well as the intestate, this court, on the evidence, after trial, grants the defendant City of New York a directed verdict in its favor, *798 dismissing the plaintiffs complaint in its entirety on the grounds that plaintiff failed to sustain her burden of proof, failed to prove that a special relationship was established between the City of New York and Mildred Greene as a matter of law by a fair preponderance of the evidence.