Gibson, J.
Plaintiff’s intestate, while employed by an excavation subcontractor engaged in the construction of a private sewer line in a city street, was killed by the cave-in of the trench in which he was working. His administratrix brought this wrongful death action against the general contractor and the City of New York and at Trial Term had a verdict against the city. The jury exonerated the general contractor and that determination was not appealed. Upon the city’s appeal from the judgment entered upon the verdict against it, the Appellate Division, with two Justices dissenting, reversed, on the law, and dismissed the complaint, while affirming the findings of fact implicit in the verdict. Our discussion will, of course, treat the proof in the light most favorable to plaintiff.
The trench in question had been excavated to a depth of over 11 feet but had not been braced or shored or otherwise safeguarded, as required by rule 3.10 of the Rules of the Board of Standards and Appeals of the City of New York and by section 23-8.2 of the Industrial Code (12 NYCRR 23.8 [b] [1]), as well as by the plans prepared and approved by the City of New York for this particular sewer connection construction. The safety rules prescribed shoring for excavations over five feet deep, given conditions of inadequate slope and loose soil. Here was a ditch 11% feet in depth, with straight, loose soil banks, and with those obvious dangers aggravated by traffic vibrations.
Just prior to the accident, decedent was engaged in setting a pipe in the trench. His supervisor was not at the job site. The *69 city sewer construction, inspector assigned to the project was at the site, had been there all day, and, indeed, had observed decedent as he descended into the trench at a point where it was 11% feet deep. It was at this juncture that the inspector said, “ It is pretty solid there ” and “ I don’t think it needs to be shored.” This evidence was critical to the plaintiff’s case, as the city in its brief recognizes in framing the second of the two questions which it deems presented: “2. A City inspector at the trench site told the decedent, ‘ It is pretty solid there, ’ and further said, ‘ I don’t think it needs to be shored.’ Did such utterance constitute an assumption of direction and control over decedent’s work so as to make the City liable for his death? ”
With respect to this proof, the court charged the jury that in order to find against the city it must find that the inspector assumed control and direction of the work and that such a conclusion could only be arrived at if it could be found that he gave decedent11 an order or affirmative instruction to enter the excavation ’ ’, that only a 1 ‘ passing permission ’ ’ would not suffice; and the jury was warned that the mere failure of the city to enforce safety statutes and regulations does not alone impose liability.
In an opinion written upon the denial of the city’s motion to set aside the verdict, the trial court said that no liability would devolve upon the city for mere failure to enforce safety code provisions and that the utterance of the inspector, O’Brien, “ standing out of context with the surrounding circumstances, would not constitute an affirmative direction ’ ’, but that there must be considered ‘‘ the provisions of the City Charter and Code and the fact that O’Brien, as the City’s agent, bore the badge of authority, and that his position gave him an aura of assumed expertise with respect to interpretation and enforcement of the Labor Laws.” The court compared this situation to the one in Broderick v. Cauldwell-Wingate Co. (301 N. Y. 182) where the subcontractor’s employee was given negligent direction by the general contractor, thus conferring liability on the latter, but the court noted the distinction that a general contractor, who has over-all control anyway, may assume direct control at any time. The city having previously had no such control over this project, said the court, there was here no such authority as in Broderick, unless it could be spelled out from the *70 fact that at the threshold of disaster the city, through O’Brien, had the right to stop work on the project until the dangerous condition should be remedied; and this rationale was, in the trial court’s opinion, the proper basis upon which the question had been submitted to the jury, as, indeed, the similar issue had been submitted in Broderick.
The Appellate Division, however, found the Broderick case inapplicable and expressed the very general observation that the city violated no mandatory duty imposed upon it other than its general duty of inspection, and held that decedent was not “ one of a class for whose special benefit a statute had been adopted. ’ ’[1] The Appellate Division did not deal with the facts involving the city inspector’s presence and participation nor with the basis of liability discussed in the trial court’s opinion.
It was the inspector’s duty to inspect the trench to see that it was shored to meet safety requirements. The city had the power in case of safety rule violations endangering life or prop-erty to stop the work and require the workers to vacate the site (Administrative Code of City of New York, former § C26-203.0 [now § C26-85.0]); and the city seems not to take issue with appellant’s contention that this power was exercisable by the inspector; and neither, of course, does it challenge the Appellate Division’s conclusion that “the inspector’s authority, at best, was limited to his power to order the work stopped”; and, indeed, the “ [ejmergency measures ” so conferred by section 026-203.0 would seem of small value if they could not be instantly invoked by the inspector on the job, so as to prevent disaster such as here ensued upon the patent violations of the safety regulations.
' The city correctly asserts that there can be no municipal liability for failure to perform a general protective governmental function; that an inspector’s failure to ascertain a violation cannot confer liability (Young v. State of New York, 278 App. Div. 997, affd. 304 N. Y. 677; Infosino v. City of New York, 25 A D 2d 841, mot. for lv. to app. den. 18 N Y 2d 583; Whitney v. City of New York, 27 A D 2d 528). The question here, however, goes beyond the basic failure to perceive a violation. Here *71 a blatant violation existed; the categorical regulations did not permit the inspector to form a judgment but he nevertheless proceeded to do so and wrongly adjudged the trench to be safe and stood by while decedent, knowing of his presence and approval, entered into the perilous situation. In Runkel v. City of New York (282 App. Div. 173), the city was sued for injuries occurring to children who were playing in a dilapidated house which could be found an inherently dangerous instrumentality. The city had the duty under pertinent code provisions to see to it that this danger was removed, and its liability lay in its neglect to fulfill that duty. The rule basic to the decision was expressed as follows (p. 176): “ [This house] may be said to constitute a trap or an [1] inherently dangerous ’ instrumentality which is in the same class as an explosive substance, inflammable material, a live electric wire or a spring gun. Injury sustained by any person, even though he be a trespasser, due to such an inherently dangerous instrumentality, may be said to have been caused by the wanton or intentional or inhuman act of the one responsible for its existence or its removal and will cast him in liability ’ ’. This concept of municipal liability based on statutory duty, knowledge and foreseeability because of the inherently dangerous situation was approved by this court in a related case (Runkel v. Homelsky, 286 App. Div. 1101, affd. 3 N Y 2d 857). Then, of course, in the case of Schuster v. City of New York (5 N Y 2d 75) liability was found where the facts gave rise to an affirmative obligation on the part of the city to furnish Schuster with adequate police protection; that obligation was taken too lightly, Schuster being given false assurances of his safety, and the duty which had devolved upon the city to go forward and take some preventive action was breached.
The case before us suggests the Runkel-Schuster type of situation because of the city’s actual knowledge of the dangerous condition and its failure to do anything about it at a time when the inspector was directly on hand as the peril heightened. The city attempts to convince us, as it did the majority below, that under the rule announced in Motyka v. City of Amsterdam (15 N Y 2d 134) (see, also, Messineo v. City of Amsterdam, 17 N Y 2d 523) there can be no liability for failure to enforce a statute. As already noted, this is perfectly true, as witness the Young, Infosino and Whitney cases (supra). The facts in those cases, *72 like the situation in Motyka, differ from those presented here. The theory of recovery in Motyka was that the city failed to follow up knowledge of the fire captain that a heater, which had already caused a fire which firemen had quelled, was defective and the city was negligent in not seeing to it that the heater was disposed of. Relying largely on Moch Co. v. Rensselaer Water Co. (247 N. Y. 160), where it was held that the statutory duty running from a private water supplier to the city to provide hydrant water did not inure to the benefit of the citizenry at large, the Motyka court said that it had never been held that any liability could exist for failure to provide adequate fire or police protection. Citing Schuster, the court did acknowledge that [1] ‘ tort liability has been held to exist where there has been some relationship on the part of the defendant to the plaintiff creating a duty to use due care for the benefit of particular persons or classes of persons ” (15 N Y 2d 134, 139). In the case at bar, the jury was warranted in finding the type of relationship there envisioned, involving the extension of the duty to a particular individual because of acts or omissions directly affecting him. It may be worthy of note that in Motyka (supra). the fire captain at least ordered the tenant to stop using the dangerous stove. Other notifications, to the owner and Commissioner of Public Safety, were required by statute; but these were duties not running directly to the accident victim. Out of the facts in the instant ease, there may be perceived a basis for such a special duty, created by the mere presence of the inspector and his failure to prevent decedent from entering the trench, if only by exercise of the city’s undoubted power to halt the work.[2] We are not required in this case, however, to determine whether such a basis, or perhaps tentative basis, would support a claim of liability predicated on mere inaction or passivity in the face of the mortal danger so clearly apparent; as here the liability was triggered in any event by the inspector’s positive action in assuming direction and control, as the jury could reasonably find, under the court’s instructions in that regard, *73 which were charged at the city’s request, to which plaintiff excepted.
As has been noted, the city’s brief states:“ It must be remembered that although certainly decedent was a member of the class for whose benefit the Labor Law provisions were enacted, the City did not violate those provisions. At most, the City’s wrongdoing was the failure to enforce the provisions.” That would be a fair statement given a Young or Motyka case (supra), but it overlooks the added relationship produced by the markedly different facts in this.
The city does not assert that O’Brien’s actions and failure to act, or either, were not negligent and, in fact, and as we have already remarked, the city, in framing the issues, assumes that in saying that the banks looked solid and needed no shoring he was addressing himself to decedent. This, therefore, is not a case where the municipality has been found by a jury to be liable for a mere error of judgment on the part of an employee. All the evidence produced indicates that the inspector really had no occasion to make a judgment, so open and obvious were the violations. The inspector’s utterances, given these conditions, cannot be viewed as representing a calculated judgment as to safety. They could easily be interpreted as more than acquiescence in decedent’s descent, and as an exercise of control by the only person in authority then present.
The order appealed from should be reversed and the judgment of Supreme Court, Bangs County, reinstated.

. The city’s brief, however, states “that although certainly decedent was a member of the class for whose benefit the Labor Law provisions were enacted, the City did not violate those provisions,”

. In the Moch case (247 N. Y. 160,167, supra), Judge Cardozo stated: “If conduct has gone forward to such a stage that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward [citation]