OPINION OF THE COURT
Vincent G. Bradley, J.
Calendar No. 135 and No. 136 are hereby consolidated for disposition. Defendant, the City of New York, moves to dismiss pursuant to CPLR 3211 (subd [a], par 7) on the grounds that the claim in both actions fails to state a cause of action.
Plaintiffs in both cases for both actions against the City of New York have personal injuries suffered when a taxicab in which the Perrins and Mrs. Linindoll were riding was struck by another taxicab. The cab in which the Perrins and Mrs. Linindoll were riding was proceeding westbound on 75th Street in New York City going through the intersection with Lexington Avenue when the cab was struck by another taxi causing personal injuries to all three passengers. The pertinent parts of both complaints allege negligence on the part of the city as an immediate and proximate cause of the collision and that the negligence consisted of a failure to properly inspect said taxis as it was its statutory duty to do so and that it failed to *258 adequately examine and test the drivers of said taxis to determine whether they were capable of safely engaging in the transportation of persons for hire pursuant to the same statutory duties. The defendant asserts that the inspection of taxicabs which are operated within the City of New York and the taxing and licensing of the drivers thereof are general protective governmental functions to which no municipal liability attaches for failure to perform the same.
The issue in this case is whether or not the duties imposed upon the city pursuant to chapter 65 of the Administrative Code of the City of New York created a special relationship between the city and an individual or group of individuals, i.e., in this case, riders of taxicabs (see Sanchez v Village of Liberty, 42 NY2d 876, 877-878; S mullen v City of New York, 28 NY2d 66; Moytka v City of Amsterdam, 15 NY2d 134).
A review of the provisions of chapter 65 of the Administrative Code is enlightening. Section 2301 of the Administrative Code states as follows: “Legislative findings. — It is hereby declared and found that the business of transporting passengers for hire by motor vehicle in the city of New York is affected with a public interest, is a vital and integral part of the transportation system of the city, and must therefore be supervised, regulated and controlled by the city.” Section 2304 of said chapter of the Administrative Code sets out comprehensive provisions for the licensing of vehicles. Part of subdivision F of that section states: “An owner shall be ordered by the commission to repair or replace his licensed vehicle where it appears that it no longer meets the reasonable standards for safe operation prescribed by the commission.”
Section 2305 of the Administrative Code sets out extensive provisions for the licensing of drivers. Among the requirements of this section are that a proposed licensee be fingerprinted, be of good moral character, not be addicted to the use of drugs or intoxicating liquors and be of sound physical condition and “mind which might render him unfit for the safe operation of a licensed vehicle.” (Administrative Code, ch 65, § 2305, subd b, par 3; emphasis added; see, also, Administrative Code, § 2305, subd b, pars 4, 5, 6.) The *259 aforesaid section goes on to require that each applicant be examined by a licensed physician as to his physical condition and by the commission as to his knowledge of the city (Administrative Code, § 2305, subd d). The court notes that section 2322 of the Administrative Code lists studies to be conducted by the New York City Taxi and Limousine Commission which include the operation of gypsy cabs and the unavailability of cab service in certain areas of the city. The section goes on to state (Administrative Code, § 2322, subd a):
“At the same time we find that gypsy cabs frequently operate illegally by violating those provisions of the law which prohibit them from picking up passengers on the street. We are also concerned that the operations of gypsy cabs do not meet the high standards of licensing which govern drivers of medallion cabs.
“We find that the combination of inadequate service and illicit operation is intolerable and dictates a thorough review of existing law.”
This court concludes on the basis of its review of the pertinent statutes, that the same indeed created a special relationship between itself and riders of taxicabs within the City of New York (see Sanchez v Village of Liberty, supra). The court notes that it could not even be argued that these provisions were for the purpose to increase revenues for the city and notes that section 2323 of the Administrative Code provides that the commission continue a special study as to the feasibility of permitting advertising on taxicabs to provide income to defray the cost of the commission to the city.
Defendant’s motions in both cases are in all respects denied.