GENERAL INSURANCE COMPANY
OF AMERICA, Plaintiff,

v.

K. CAPOLINO CONSTRUCTION CORP., K. Capolino Design and Renovation, Ltd., Kenneth L. Capolino, Patricia M. Capolino, and White Plains Housing Authority, Defendants.

K. CAPOLINO CONSTRUCTION CORP., K. Capolino Design and Renovation, Ltd., Kenneth L. Capolino, Patricia M. Capolino, Third Party Plaintiffs,

v.

WHITE PLAINS HOUSING AUTHORITY, Myron C. Simon, Mary Burwell, Lawrence Salley, Robert Feder, Isador Feldshon, J., Michael Divney and Anthony Tascione, Third Party Defendants.

No. 94 CIV. 8089(WCC).

United States District Court,
S.D. New York.

Feb. 28, 1997.

Meyer and Wild, New York City (Patricia B. Wild, J. Edward Meyer, of counsel), for Third Party Plaintiff.

Calotta Levine Samuel & Schreiber, L.L.P. New York City (Gerald Levine, Deborah Kefer, of counsel), for Third Party Defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

After our November 9, 1995, Opinion and Order denying cross-motions for summary

judgment filed by Plaintiff General Insurance Company of America ("General") and the then-named defendants, K. Capolino Construction Corporation, K. Capolino Design and Renovation, Ltd., Kenneth L. Capolino and Patricia M. Capolino (collectively, "Capolino"),[1] General amended its complaint to add claims against the White Plains Housing Authority ("WPHA") (claims 4, 5 and 6). In its answer to the amended complaint, Capolino brought a cross claim for breach of contract against the WPHA (count 1) and impleaded WPHA Commissioners Myron C. Simon, Mary Burwell, Lawrence Salley, Robert Feder, Isador Fledshon, J., Michael Divney and WPHA Executive Director Anthony Tascione ("Additional Defendants"), alleging negligence (count 2). Answer to Cross–Claims of WPHA, Cross–Claims against WPHA and Claims Against Additional Defendants ("Pldg.32").[2] Although the Additional Defendants have styled this motion as a motion to dismiss Capolino's third-party claims against them for failure to state a claim (count 2) under FED. R. CIV. P. 12(b)(6), because both sides have submitted affidavits and exhibits supplementing the pleadings, this Court converts these motions into a motion for summary judgment pursuant to FED. R. CIV. P. 56. *In Re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir.1985), *cert. denied, sub nom, M.J.M. Exhibitors, Inc. v. Stern*, 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986).

### BACKGROUND

The rather complicated facts underlying the central dispute in this case are set forth in detail in our November 9, 1995, Opinion and Order. For the purposes of this motion, we do not repeat those facts in detail, but simply summarize those events relevant to this motion and supplement them with later developments.

---

1. The claims between General and Capolino, (the 1st, 2nd and 3rd claims of General's Amended Complaint and the 1st, 2nd and 3rd counterclaims in Capolino's Amended Answer and Counterclaims), have since been settled by stipulation. *See* Stip. and Order to Dismiss Certain Claims, 2/27/97. Thus, the only claims that remain are those between General and the WPHA and between Capolino and the WPHA.

2. Rather than filing a separate third-party complaint against the Additional Defendants, Capolino simply included claims against the Additional Defendants in its answer to the WPHA's cross-claims. Instead of referring to this document by its rather cumbersome title, we refer to it by its pleading number, "Pldg. 32".

This action arises out of two separate construction contracts pursuant to which Capolino agreed to perform certain repairs on two WPHA buildings (the Winbrook and the Schyuler DeKalb Contracts). General was Capolino's surety under the contracts, and when the WPHA declared Capolino in default, General performed a separate investigation, concluded that Capolino was in fact in default, and completed performance under the contracts, receiving the remainder of the progress payments.

These events have inspired abundant litigation; this action is only one component of the numerous legal disputes among the WPHA, Capolino and General. In February 1994, Capolino filed an action in New York State court asserting claims against General for, *inter alia*, tortious interference with, and breach of, contract. The action also asserted claims against the WPHA for, *inter alia*, breach of contract, fraud and RICO violations. That action was removed to federal court and subsequently dismissed by Judge Brieant. In addition, an action is currently pending in New York State court between the WPHA and Capolino that encompasses their respective claims of breach of contract. The state action, with the exception of the defamation claims, is currently stayed.

On November 8, 1994, General filed this diversity action seeking to recover from Capolino, under the terms of its indemnity agreement with Capolino and under common law principles, approximately $132,000 in expenses that it has incurred in completing the projects and in bringing this action. Capolino filed counterclaims against General seeking a declaratory judgment that Capolino is not liable for the costs of completion. Capolino also seeks damages in the amount of the contract balances paid to General and indemnity for any judgment that the WPHA may be awarded against Capolino. Finally, Capolino has alleged damages of $250,000 from General's purported tortious interference in Capolino's contractual relationship with the WPHA. Both General and Capolino filed motions for summary judgment, arguing respec-

tively that the other was in default.[3] We denied both motions, finding that there were material issues of fact as to whether the WPHA or Capolino was in default that precluded summary judgment.

After our denial of the cross-motions for summary judgment, in March of 1996 General amended its complaint and added claims in the alternative against the WPHA demanding that if the WPHA is found in default, it is required to make restitution for unjust enrichment to General for the expenses General incurred in completing the work under the contract (4th claim for relief), that the WPHA is liable to General for any damages awarded to other defendants on their counterclaims against General (5th claim), and for certain unpaid claims for change orders and extra work (6th claim). In its answer to the amended complaint, Capolino brought a cross claim for breach of contract against the WPHA (count 1) and impleaded the Additional Defendants, commissioners and employees of the WPHA, alleging, *inter alia*, negligent failure to administer and supervise the contracts and. negligent misrepresentation (count 2). In its answer, the WPHA brought five cross-claims against Capolino, for, *inter alia*, declaratory judgment that it was not in default on either project, and restitution. The Additional Defendants now bring this motion, to dismiss Capolino's third-party claims against them for failure to state a claim, which we consider under Fed.R.Civ.P. 56.

## DISCUSSION

Summary judgment is appropriate "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact." *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

---

**3.** General also argued that even if Capolino were not in default, General was still justified in taking over performance of the contract because the WPHA had declared Capolino in default and

General had conducted an independent investigation that concluded that the WPHA was correct.

Additional Defendants urge that count 2 should be dismissed for several reasons. First, they argue that, to the extent that count 2 attempts to state a claim on theories other than negligence, such as fraud or interference with contract, these claims should be dismissed because they have already been dismissed by Judges Brieant and Natasi. Second, they argue that as mere officers of WPHA they owe no duty to Capolino either arising out of or independent of the contract, and thus they cannot have been negligent with respect to Capolino. Third, Additional Defendants argue that Capolino has not stated a claim for negligent misrepresentation against them since it failed to identify which Additional Defendants were personally involved in the alleged misrepresentations.[4]

### A. Interpretation of Claim 2

■ In their brief in support of this motion, the WPHA and the Additional Defendants have argued that Capolino has merely attempted to "recycle" claim language alleging tortious interference with contract and possibly fraud that has already been rejected by both the state and federal courts. We note at the outset that count 2, self-titled "(Negligence)" does not attempt to state, and could not support, a claim for fraud. In addition, to the extent it could be possibly construed to state a claim for tortious interference with contractual relations against the Additional Defendants (and we are not at all certain that it could be so construed), we find that such a claim against Anthony Tascione is barred by Judge Natasi's March 6, 1996 Decision and Order dismissing this claim against Tascione on the merits. See Tascione Aff. Exh. 3 (Officer or director of corporation is not personally liable on theory of inducing breach of contract merely because while acting on behalf of the corporation he has made decisions and taken steps that resulted in the corporation's promise being broken). Additionally, we agree with the Additional Defendants' argument that since a tortious interference claim is barred against Tascione, it is also barred against the Commissioners, who were even further removed from the administration and oversight of the contracts at issue.[5]

Thus we conclude that count 2 does not state a viable claim either for fraud or for tortious interference with contract.

### B. Negligent Administration

■ Capolino's count two can be interpreted, in part, as an attempt to bring a claim for negligent administration against the WPHA and the Additional Defendants. In New York, municipalities do not have sovereign immunity from tort liability but are equally answerable with private corporations and individuals for the wrongs of their employees. *Motyka v. City of Amsterdam*, 15 N.Y.2d 134, 256 N.Y.S.2d 595, 597, 204 N.E.2d 635 (1965). However, "when a claim is made that a municipality has negligently exercised a governmental function, liability turns on the existence of a special duty to the injured person, in contrast to a general duty owed to the public." *Garrett v. Holiday Inns, Inc.*, 58 N.Y.2d 253, 460 N.Y.S.2d 774, 779, 447 N.E.2d 717 (1983), (citing *Florence v. Goldberg*, 44 N.Y.2d 189, 404 N.Y.S.2d 583, 375 N.E.2d 763; *Sanchez v. Village of Liberty*, 42 N.Y.2d 876, 397 N.Y.S.2d 782, 366 N.E.2d 870 (no duty to fire victims), *app, d'md on other gnds*, 44 N.Y.2d 817, 406 N.Y.S.2d 295, 377 N.E.2d 748 (1978)). "Such a duty exists when a special relationship exists between the municipality and an individual or class of persons, warranting the imposition of a duty to use reasonable care for these persons' benefit." *Garrett*, 460 N.Y.S.2d at 778, 447 N.E.2d 717. "This principle operates to impose liability where the municipality has violated a duty commanded

---

4. Capolino also urges that Additional Defendants should be estopped to bring this motion because "their attorney invited the negligence claim in hope of involving the WPHA's insurance litigation in state Supreme Court." Capolino Br. p. 2. WPHA's attorney disputes this assertion. *See* Levine Aff. ¶ 10. Regardless, we consider it immaterial whether or not the WPHA invited this claim, as it is Capolino's sole responsibility to determine what claims it will bring, with due regard for its obligation to insure that such claims have a basis in law and fact.

5. See Mr. Tascione's uncontroverted affidavit, in which he states that he, not the Commissioners, is responsible for the day to day management of the WPHA. Tascione Aff. ¶ 2.

by a statute enacted for the special benefit of particular persons" *Id.* (citations omitted); "where the municipality has voluntarily assumed a duty, the proper exercise of which was justifiably relied upon by persons benefited thereby" *Id.*, (citing *Florence, supra,* (by enacting special rules and regulations city assumed duty to supervise school crossings for the benefit of young children) and *Schuster v. City of New York,* 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958) (city assumed duty to exercise reasonable care for safety of witness cooperating in prosecution)); "or in circumstances in which a known, latent and dangerous safety violations exists." *Id.,*[6] (citing *Smullen v. City of New York,* 28 N.Y.2d 66, 320 N.Y.S.2d 19, 268 N.E.2d 763 (liability found where construction worker killed after city inspector inspected trench and laws required trench to be shored.)) Thus, in order to prevail, Capolino must point to circumstances creating a special duty.

■ We agree with Additional Defendants' assertion that the two contracts at issue, standing alone, do not generate an independent duty of due care to supervise and administer the contracts that can serve as a basis for liability in tort for negligence. It is a well established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. *Clark–Fitzpatrick v. Long Island R.R.,* 70 N.Y.2d 382, 521 N.Y.S.2d 653, 656–57, 516 N.E.2d 190 (1987) (allegation of failure to exercise "due care" is "merely a restatement" of the implied contractual obligations asserted in the cause of action for breach of contract). This conclusion is bolstered by the Fourth Department's decision in *Brum v. Niagara Falls,* 145 A.D.2d 928, 535 N.Y.S.2d 856 (4th Dep't 1988), *app. denied,* 74 N.Y.2d 608, 545 N.Y.S.2d 104, 543 N.E.2d 747 (1989), in which the court rejected a lessee's argument a city was liable for negligent failure to investigate the illegality of a lease contract. The court noted that a contracting party has no legal duty to investigate the legality of the contract, and that the lessee's remedy was limited to a cause of action for breach of contract. *Id,* ("merely alleging a breach of a duty by 'employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim.'"). Since "there was no evidence of any fraud, misrepresentation or overreaching by the defendant to subject it to liability for a breach of duty distinct from a breach of contract," it reversed the negligence verdict for plaintiff. *Id.* at 857. Thus to the extent that Capolino relies upon the contract as a source for an independent duty to exercise due care in the contract's administration, its reliance is ill-founded.

■ In an attempt to find a separate source of an independent duty owed to it by the Additional Defendants, Capolino points to HUD regulations and the "White Plains Housing Authority Procurement Policies," which require that the WPHA follow certain "specific procedures in resolving disputes and claims." A review of the HUD regulation excerpts reveals that all requirements are directed to the "PHA" (Public Housing Authority), not to its officers, directors or Commissioners. *See* Meyer Aff. Exh. D. Similarly, a review of the excerpt Capolino provided from the WPHA Procurement Policies reveals no mention of the Commissioners, with the exception of Section 3, which states:

> The Authority will adhere to the following procurement procedures to handle protests and resolve disputes:
>
> a. Review of written notification from the protester by the Executive Director, Contract officer or selection committee.
>
> b. Evaluation and determination of the extent of the protest.
>
> c. Where appropriate referral to consultant, architect/engineer, etc.
>
> d. Final review by the Authority's attorney for compliance with applicable law.
>
> e. *Notification of course of action to the Board of Commissioners,* and sub-

---

**6.** *Garrett* involved this third prong; plaintiff alleged that the town approved changes in building plans even though it knew of blatant and dangerous fire code violations.

mission of all documents to the awarding agency.

Myer Aff., Exh. E (emphasis added).

While these regulations may establish a duty on behalf of WPHA and Anthony Tascione, the Executive Director, without more, we do not believe that regulations prescribing the obligations of *WPHA* can be construed as creating duties owed by the individual Commissioners. The mere requirement that the Commissioners be notified of the course of action, without prescribing their responsibility to approve of or otherwise affirmatively act with respect to the course of action, does not create an independent duty owed by them to supervise WPHA's contracts.

 We note, moreover, that any duty owed by the WPHA and Anthony Tascione by virtue of the WPHA and HUD regulations would not inure to the benefit of Capolino. *See Motyka,* 256 N.Y.S.2d at 598, 204 N.E.2d 635 ("liability arises out of a statute only in limited instances where disregard of the command of the statute results in damage to one of the class for whose special benefit the statute was enacted.") WPHA's duty, if any, would inure to the general public; Tascione's would inure to the benefit of the WPHA, and derivatively, to the general public. Thus, we do not believe that the WPHA and the Additional Defendants owe Capolino an independent duty of diligent administration of contract arising either from the contract itself or from their role as public officials to administer and supervise WPHA's contracts.[7]

 Lastly, Capolino argues that only Capolino Construction's negligence claim against the WPHA Defendants can be considered barred by the contracts between Capolino Construction and the WPHA, since "[o]nly Capolino Construction is a party to the contracts ...." Cap. Br. p. 12. Thus, it urges that the claims by Capolino Design and

Renovation against General, for General's cutting off business relations with it and refusing to provide any more bonds, as well as those brought by the Capolinos individually, for damages they suffered as sureties, should survive. First, we note that WPHA is not moving for dismissal—the Additional Defendants alone have brought this motion. Second, Capolino again appears to have misunderstood the nature of a negligence tort—defendant must have a duty to plaintiffs that has been breached. To prevail on this argument, Capolino must point to a source of such duty, independent of the contracts. We see no independent source of a duty to administer the contracts owed by the Additional Defendants to Capolino Design and Renovation, or to Kenneth or Patricia Capolino. Thus, their claims against the Additional Defendants for negligent failure to supervise do not survive either.

We therefore grant the WPHA's and the Additional Defendants' motion for summary judgment dismissing count 2 to the extent it states a claim for negligent supervision.

### C. Negligent Misrepresentation

 The Southern District of New York has extended Rule 9(b) to all averments of fraud or mistake, "whatever may be the theory of legal duty—statutory, common law, tort, contractual, fiduciary." *Frota v. Prudential–Bache Sec.,* 639 F.Supp. 1186, 1193 (S.D.N.Y.1986). Thus, the 9(b) pleading rules apply to Capolino's count 2 to the extent it alleges a claim for negligent misrepresentation. Under Fed.R.Civ.P. 9(b), "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In order to plead fraud with particularity, a "plaintiff must state precisely what material misstatements were made, the time and place of each misstatement, the speaker, the content, the manner in which the statement was misleading,

---

7. Capolino also argues that the "issue is one of governmental immunity." They apparently suggest that this doctrine should be read to confer upon plaintiffs a positive right of action against government officials in situations where the officials are performing merely ministerial, as opposed to discretionary duties. Plaintiff has misapprehended the role of governmental immunity, however. Governmental immunity is a *defense* a government official can raise to an otherwise valid claim against him or her. It does not generate a cause of action against a government official for negligent performance of ministerial acts. Some other circumstances must exist to support the underlying claim.

and what the defendants 'obtained' as a result of the fraud." *Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.,* 933 F.Supp. 347, 356 (S.D.N.Y.1996) (citations omitted).

█ It appears likely that Capolino's second cross-claim does not state a claim for negligent misrepresentation against any of the Additional Defendants with the possible exception of Tascione.[8] Regarding the Commissioners, Capolino alleges that "Defendants WPHA, the Commissioners and Anthony Tascione ... made material misrepresentation of fact to Capolino, as set forth below." Pldg. 32 ¶ 65. Scrutinizing the complaint, we find only two possible instances where it could be construed as an attempt to allege that the Commissioners made negligent misrepresentations. The first is found in ¶¶ 66–67 of Pldg. 32, which alleges that "WPHA, the Commissioners and Tascione ... falsely claim[ed] that vast amounts of additional work needed to be done by Capolino on an accelerated basis," in spite of the existence of WPHA "status reports and other documents" which stated Capolino was 100% finished with work on one project, and 92% finished with the other. The second possible instance is found in ¶ 70, which alleges, *inter alia,* that the "WPHA and the Additional Defendants ignored such initiatives and further intimidated and threatened Capolino by falsely, negligently and publicly stating that Capolino was in default ...." These allegations are not specific as to the time, place and content of the statements made; thus they are insufficiently pled. If the trial date were not so close at hand, we might allow Capolino leave to replead these allegations. Such an opportunity is not necessary here, however, since this motion has been converted to a motion for summary judgment and the evidence before us, consisting almost entirely of the bare allegations of the complaint, is insufficient to defeat a motion for summary judgment.

The only other evidence in the record is Mr. Tascione's affidavit, in which he states, as discussed above, that he, not the Commissioners, is responsible for the day to day management of the WPHA. Tascione Aff. ¶ 2. Capolino offers no evidence to rebut this, but simply relies on its rather vague pleadings. Thus, there is no evidence in the record before us as to the exact time, place, manner, speaker and content of the alleged misrepresentations. Therefore, we find that Capolino has failed to meet its burden to produce evidence to raise a genuine issue of material fact as to the Commissioners' role in the alleged negligent misrepresentations.

We therefore grant Additional Defendants' motion for summary judgment on claim 2 insofar as it states a claim for negligent misrepresentation against the Commissioners, preserving it only to the extent the claim alleges Anthony Tascione himself made negligent misrepresentations.

### D. *Leave to amend*

█ Defendants have requested leave to amend their complaint to add an equal protection claim against the WPHA and Anthony Tascione. Because a responsive pleading has already been served, leave to amend must be obtained from the District Court. Fed.R.Civ.P. 15(a). Rule 15(a) specifies that "leave shall be freely given when justice so requires" and the Supreme Court has emphasized that amendment should normally be permitted. *Nerney v, Valente & Sons Repair Shop,* 66 F.3d 25, 29 (2d Cir.1995) (emphasis added). However, "[u]ndue delay and futility of the amendment, among other factors, are reasons to deny leave." *Id.* (citations omitted).

█ In support of their request to add an equal protection claim, Capolino refers to *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1352 (2d Cir.1994). In that case the Second Circuit stated:

> "An equal protection violation based upon selective application of a facially neutral state regulation is properly found when:

---

8. *See, e.g.,* Pldg. 32 ¶ 66 "The WPHA and Tascione ... made representations ... that Capolino would be paid progress payments consistent with the state of its construction performance ... " and ¶ 68 "Tascione, together with the WPHA's representatives, Gismondi & Arnold, threatened to hold Capolino in default...."

(1) the person, compared with others similarly situated, was selectively treated, and

(2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, *or by a malicious or bad faith intent to injure the person.*"

*Id.,* (emphasis added), (citing *Wayte v. United States,* 470 U.S. 598, 608–609, 105 S.Ct. 1524, 1530–32, 84 L.Ed.2d 547 (1985); *LeClair v. Saunders,* 627 F.2d 606, 609–610 (2d Cir.), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)).

While it is conceivable that Capolino may be able to establish that the WPHA and Tascione acted with a malicious bad faith intent to injure them, we do not see, based upon the nature of the underlying controversy, how Capolino could establish that he was selectively treated compared to others *similarly situated.* We doubt that Capolino could find other contractors whose performance of their contracts was comparable to that of Capolino. Believing that such an amendment would therefore be futile, we deny leave to amend.

## CONCLUSION

Thus we grant Additional Defendants' motion to dismiss Count 2 in its entirety, except to the extent that it states a claim against the WPHA and Anthony Tascione for negligent misrepresentation. In addition, we deny Capolino's request for leave to amend the complaint to add an equal protection claim.

SO ORDERED.

