**IKEA NORTH AMERICAN SERVICES, INC. and Deutsch, Inc., Plaintiffs,**

v.

**NORTHEAST GRAPHICS, INC., Precision Technology, Inc. and Spectrum Direct, Inc., Defendants.**

**No. 99 Civ. 1801(JSR).**

United States District Court, S.D. New York.

July 1, 1999.

Geoffrey R. Kaiser, Howard S. Veisz, Louisa S. Ruffine, Kornstein, Veisz & Wexler, L.L.P., New York City, for plaintiffs.

James E. Brandt, Latham & Watkins, New York City, for Northeast Graphics, Inc., defendant.

Frank W. Ryan, Nixon Peabody LLP, New York City, for Precision Technology, Inc., Spectrum Direct, Inc., defendants.

## MEMORANDUM ORDER

RAKOFF, District Judge.

On March 11, 1999 plaintiffs IKEA North American Services, Inc. ("IKEA") and Deutsch, Inc. filed this diversity action against defendants Northeast Graphics, Inc., Precision Technology, Inc. and Spectrum Direct, Inc., alleging breach of contract, fraud, negligence, and violations of the New Hampshire and Connecticut consumer protection statutes. Defendants promptly moved to dismiss. Following briefing and oral argument, the Court telephonically informed counsel on June 18, 1999 that defendants' motions would be granted in part and denied in· part. This Memorandum Order will formally confirm those determinations and briefly set forth the reasons therefor.

The allegations of the Complaint pertinent to these motions are as follows. In the summer of 1998, IKEA, through its North American advertising agent Deutsch, hired defendant Northeast Graphics to produce a "holiday" brochure advertising IKEA products and to mail the brochure to 3.8 million homes throughout

the United States and Canada. · Complaint ¶¶ 2–4. To maximize impact on holiday shopping, Northeast Graphics contractually committed to (i) begin the mass mailings no later than October 22, 1998, (ii) mail at least 2.6 million of the brochures by November 13, and (iii) complete the mailing by November 20. *Id.* ¶ 4. In furtherance of the contract, Northeast Graphics hired co-defendants Precision Technology and Spectrum Direct to collate, bind, and distribute the brochures. *Id.* ¶ 22.

Between early November and November 17, 1998, Deutsch, on behalf of IKEA, repeatedly asked Northeast Graphics about the status of the mailing and received oral assurances that the campaign was proceeding as agreed. *Id.* ¶¶ 10, 30–32. Additionally, on November 12, 1998, as evidence of its progress, Northeast Graphics sent Deutsch thirteen "Postal Register Statements"—post office documents attesting to the weight, number of items, and postage placed in the mail—purportedly showing the mailing of 2,999,-641 brochures by Spectrum Direct. *Id.* ¶¶ 7, 33–34, Ex. A. In actuality, however, the oral assurances were lies, and the Postal Register Statements were fabrications and forgeries. *Id.* ¶¶ 35–36. As late as November 20, 1999 (the deadline for completion of the entire mailing) 80% of the brochures remained on a factory floor at Precision Technology and were not delivered until thereafter. *Id.* at 42.

Assessing defendants' motions in light of these allegations taken most favorably to plaintiffs, the following conclusions emerge:

■ *First,* these and the other allegations of the Complaint fail to make out claims of fraud distinct from the claims of breach of contract, and the claims of fraud must therefore be dismissed with prejudice. Under New York State law,[1] a plaintiff cannot maintain a claim of fraud against a party with whom plaintiff has contracted unless the plaintiff can (i) demonstrate that the fraud arises from a legal duty owed to plaintiff separate from the defendant's duty to perform under the contract, (ii) demonstrate that defendant has made a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) demonstrate the plaintiff is entitled to special damages caused by the fraud that are unrecoverable as contract damages. *See Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,* 98 F.3d 13, 19–20 (2d Cir.1996) (applying New York law); *see also Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897, 899 (2d Cir.1980) (same). By contrast, even intentionally misleading statements by a defendant falsely indicating an intent to perform under a contract and/or concealing a breach of the contract do not give rise to an action for fraud. *See Bridgestone,* 98 F.3d at 19; *see also Reuben H. Donnelley Corp. v. Mark I Marketing Corp.,* 893 F.Supp. 285, 290 (S.D.N.Y. 1995) (applying New York law).[2]

The oral and written misrepresentations here alleged, while serious, are limited to false statements of contractual performance and attempted concealments of contractual breach. Seeking to avoid the obvious bar to a fraud claim premised on such misrepresentations, plaintiffs theorize that the misrepresentations breached an independent duty to plaintiffs created by the federal mail fraud statute, 18 U.S.C. § 1341, which makes it a federal crime to

---

1. All parties cite chiefly to New York law on this issue and agree in any event that the law of the other jurisdiction (New Hampshire) arguably applicable to this issue does not differ from the law of New York in the respects here relevant. Accordingly, the Court will apply New York law to this issue. *See Curley v. AMR Corporation,* 153 F.3d 5, 12 (2d Cir. 1998).

2. The fundamental reason for this doctrine, which traces back to the common law, lies in the recognition that virtually every dispute over breach of contract involves an allegation that the breaching party has lied about its performance. It would materially chill commerce if every time a contracting party suffered what it believed was a breach of performance the party could also bring a tort claim for fraud.

use the mails in furtherance of a scheme to defraud. Plaintiffs' theory, if true, would virtually destroy the state law bar to fraud claims premised on concealment of contractual breaches, since virtually any such misrepresentation for the purpose of obtaining or retaining contractual payment could qualify as a mail fraud offense if there was any use of the mails in any way incident to the furtherance of the scheme. *See Schmuck v. United States,* 489 U.S. 705, 710, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989).

■ But no such evisceration of established state law is here warranted, because it is well settled that the mail fraud statute creates no independent duty to private individuals, nor gives rise in itself of any private rights of action. *See e.g., Official Publications, Inc. v. Kable News Co.,* 884 F.2d 664, 667 (2d Cir.1989). Rather, the victim of mail fraud is the United States, and the burden of enforcing the duties created by the statute is on the United States. *See generally,* Jed S. Rakoff, "The Federal Mail Fraud Statute, Part I," 18 Duquesne L.Rev. 771 (1980).

Accordingly, plaintiffs' fraud claims are dismissed with prejudice.

■ *Second,* for similar reasons, plaintiffs' claims of negligence must also be dismissed with prejudice because defendants have breached no duty distinct from, or in addition to, their contractual duties. *See Sommer v. Federal Signal Corporation,* 79 N.Y.2d 540, 553, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992); *see also Gen. Ins. Co. v. K. Capolino Construction Corp.,* 957 F.Supp. 457, 462 (S.D.N.Y.1997). While additional duties of special care sounding in tort have been read into contractual relationships in certain circumstances (such as where a party has obtained a position of special confidence or trust with respect to the other, or possesses specialized or unique expertise), here the factual allegations of the Complaint, even when read most favorably to plaintiffs, fail to make out a claim of any such special cir-

cumstances. *See Kimmell v. Schaefer,* 89 N.Y.2d 257, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996).

■ *Third,* and again for similar reasons, plaintiffs' claims under the New Hampshire and Connecticut Unfair Trade Practices Acts (assuming, *arguendo,* that those statutes otherwise apply) must also be dismissed with prejudice because those statutes do not apply to circumstances involving a simple breach of contract, even when, as here, misrepresentations have been made regarding performance. *See Barrows v. Boles,* 141 N.H. 382, 390, 687 A.2d 979 (1996); *see also Retrofit Partners v. Lucas Industries, Inc.,* 47 F.Supp.2d 256, 271 (D.Conn.1999); *Chaspek Manuf. Corp. v. Tandet,* 1995 WL 447948, *12 (Conn.Super.1995).

*Fourth,* while the breach of contract claim against Northeast Graphics survives, plaintiffs concede that they have failed to plead any valid theory for pursuing their contractual claims against the subcontractors, Precision Technology and Spectrum Direct, but represent that they may still be able to do so. The Court therefore dismisses the contract claims against Precision Technology and Spectrum Direct without prejudice to plaintiffs' attempting to re-plead these claims if, as envisioned by the Case Management Plan, they can do so by September 3, 1999.

*Fifth,* the motion of two of the defendants to dismiss plaintiff Deutsch from the case for lack of standing is denied without prejudice to its being renewed following discovery. *See generally Allen v. West-Point–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991).

In summary, plaintiffs' fraud, negligence, and consumer protection claims are dismissed with prejudice, plaintiffs' contract claims against defendants Precision Technology and Spectrum Direct are dismissed with leave to re-plead by no later than September 3, 1999, and defendants'

motion to dismiss plaintiff Deutsch for lack of standing is denied without prejudice.

SO ORDERED.