[890 NYS2d 811]

GARY D. GOTLIN, Richmond County Public Administrator, as Administrator of the Estate of HAILEY GONZALEZ, Deceased, Plaintiff, v CITY OF NEW YORK et al., Defendants.

Supreme Court, Kings County, October 30, 2009

## APPEARANCES OF COUNSEL

*Emery Celli Brinckerhoff & Abady, LLP* (*Eric Hecker* of counsel), for plaintiff. *Michael A. Cardozo, Corporation Counsel,* New York City (*Kimberly Lennard* of counsel), for defendants.

## OPINION OF THE COURT

ROBERT J. MILLER, J.

Motion by plaintiff Gary D. Gotlin, Richmond County Public Administrator, as administrator of the estate of Hailey Gonzalez, deceased, for an order granting leave to serve interrogatories pursuant to CPLR 3130 (1); motion by defendants City of New York, New York City Administration for Children's Services, Maria Cruz, David Stephens, Steve Marcus, James Palma, Belkys Marquez, Esther Rodriguez, Shatonya Capers, sued herein as Shatoya Higgins, Chioma Kagha, Jontarr Johnson, Gennell McCord, Andrew Blake, Josee Carcon, Judy Enwright, and Estelle McIntosh for an order dismissing the complaint pursuant to CPLR 3211 (a) (7); and cross motion by said defendants for an order, among other things, precluding plaintiff

from taking any depositions are consolidated for disposition herein and, upon consolidation:

1. the motion by defendants is granted only to the extent of dismissing plaintiff's third cause of action based upon 42 USC § 1983, and

2. the motion by plaintiff and the cross motion by defendants are granted only to the extent of permitting plaintiffs to serve the proposed interrogatories numbered 1, 2 and 6 and to thereafter conduct depositions.

This action arises out of the wrongful death of Hailey Gonzalez, an infant, in August 2007 while under the supervision of the New York City Administration for Children's Services (ACS). It is alleged by plaintiff that Hailey Gonzalez was killed by Edwin Garcia, the companion of her mother, and that ACS, which was charged under a Brooklyn Family Court order with supervising the child's home, "had a mountain of evidence confirming that Hailey's mother repeatedly placed herself and her children in extremely dangerous domestic violence situations." The individual defendants are either caseworkers or supervisors employed by ACS and it is alleged that they "played a substantial role in the events that led to Hailey's death" and were "grossly negligent."

In his motion, plaintiff points out that, on February 25, 2009, he served defendants with a first notice of discovery and inspection (the first notice), which contained various interrogatories. On May 28, 2009, defendants served a response to the first notice; however, with respect to the interrogatories, defendants asserted that Hailey Gonzalez's case records "contain the information sought" by each interrogatory and that such information would only be provided upon execution of a confidentiality agreement. Before an agreement could be executed, plaintiff withdrew the interrogatories contained in the first notice. In their place, plaintiff proposes to serve a second notice of discovery and inspection as set forth in exhibit C of his motion.[1] Although plaintiff acknowledges that CPLR 3130 (1) provides that a party in a negligence action shall not be permitted to serve interrogatories and conduct a deposition of the same party,

---

1. The interrogatories contained within the second notice of discovery and inspection seek the names of all caseworkers assigned to Hailey Gonzalez's case, the persons responsible for investigating her death, the persons knowledgeable with respect to ACS' policies regarding compliance with court-ordered supervision, domestic violence counseling and criminal background checks, and the identity of all witnesses whom defendants intend to call at trial.

he argues that the statute is inapplicable because a claim based upon a violation of 42 USC § 1983 has been asserted and, therefore, he should be permitted to conduct depositions herein.[2] Plaintiff points out that interrogatories "only seek the identities of witnesses" so as to narrow down the list of people to be deposed.

In their motion, defendants contend that, since the infant was killed by a private actor and she was not in their custody, the complaint fails to state a claim based upon a violation of her constitutional rights. With respect to the adequacy of their court-ordered monitoring of the infant's household, defendants argue that they are entitled to absolute immunity for any claim premised upon the quality of their investigation and supervision. Although ACS monitored the family pursuant to its obligations under the Social Services Law, defendants assert that its obligations did not create a special relationship with respect to the infant so as to constitute a predicate for liability.

In opposition to the cross motion, plaintiff maintains that a "special relationship" did exist since defendants' duty arose from a supervision order issued by the Family Court, which order "triggered a number of specific, mandatory duties under applicable state regulations." Plaintiff also asserts that there was a "voluntary assumption of duty" by defendants because the Family Court ordered ACS to supervise Hailey Gonzalez's home, ACS knew Hailey Gonzalez's mother was prone to domestic violence situations, there was direct contact between ACS and the infant, and the infant, through the Family Court and her law guardian, relied upon defendants' affirmative undertaking of their duty to care for her. Under the circumstances, plaintiff contends that the complaint states viable claims for negligent supervision and wrongful death. Plaintiff further asserts that defendants are not entitled to judicial immunity because, in this case, ACS' obligations were not "an integral part of the judicial process," but were an exercise of its statutory prerogative, "an end in itself: protecting the child from harm." With respect to his claim for violation of the Due Process Clause of the Federal Constitution, plaintiff concedes that, in view of *DeShaney v Winnebago County Dept. of Social Servs.* (489 US 189 [1989]), "it is unrealistic to expect this Court to recognize a federal right in this case based on that precedent."

---

**2.** Although plaintiff asserts (in his first two causes of action) claims for negligent supervision and wrongful death, his third cause of action alleges that defendants deprived the infant of her constitutional rights by failing to ensure her safety while they were supervising her home.

In their cross motion, defendants note plaintiff's concession that his constitutional claim is not viable and they point out that plaintiff previously served interrogatories. Therefore, they argue that, pursuant to CPLR 3130 (1), plaintiff may not now seek depositions or serve further interrogatories since his remaining claims (assuming the complaint is not dismissed in its entirety) sound in negligence. In their reply papers (with respect to the motion for dismissal), defendants contend that a Family Court order of supervision does not create a special duty since the applicable statutes do not create a private right of action. Although ACS may have agreed to carry out court-ordered supervision, defendants maintain that ACS' assumption of an affirmative duty to act did not establish a special duty since ACS was simply doing what it was required to do under the Social Services Law and its applicable regulations. Moreover, defendants submits that ACS' supervision was "a judicially delegated function and an integral part of the judicial process," given the Family Court's directive to supervise the family and to report on the case at court conferences.

In a reply affirmation in further support of his motion for leave to serve interrogatories, plaintiff states that he has offered a "compelling reason" why this court should exercise its discretion to permit the "modest relief sought" in his motion; that is, by identifying people with relevant knowledge, the information will "streamline" the discovery process. Insofar as defendants suggest that plaintiff has waived his right to conduct depositions by serving his first notice, he contends that defendants' responses "speak for themselves" since defendants have not answered any of the initial interrogatories.

> "It is well settled that on a motion to dismiss a complaint for failure to state a cause of action pursuant to CPLR 3211 (a) (7), the pleading is to be liberally construed, accepting all the facts alleged in the complaint to be true and according the plaintiff the benefit of every possible favorable inference" (*Jacobs v Macy's E.*, 262 AD2d 607, 608 [1999]).

As plaintiff appears to concede, he has failed to make out a cognizable claim under the 14th Amendment and 42 USC § 1983 since there is no showing that Hailey Gonzalez was deprived of her substantive due process rights (*see Thomas v Tarpley*, 268 AD2d 258 [2000]). A state's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause (*see DeShaney v Winnebago County*

*Dept. of Social Servs.*, 489 US 189, 197 [1989]). Therefore, the third cause of action is dismissed.

By virtue of the governmental immunity doctrine, a municipality and its agents cannot be held liable for negligence in the exercise of a governmental function absent a special relationship between the governmental agency and the plaintiff (*see Lauer v City of New York*, 95 NY2d 95, 100 [2000]).

> "A special relationship can be formed in three ways: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation" (*Pelaez v Seide*, 2 NY3d 186, 199-200 [2004]).

> "To form a special relationship through breach of a statutory duty, the governing statute must authorize a private right of action. One may be fairly implied when: (1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the governing statute; and (3) to do so would be consistent with the legislative scheme (*see Sheehy v Big Flats Community Day*, 73 NY2d 629, 633 [1989])." (*Id.* at 200.)

Here, plaintiff's claims fail the last of these tests. There is no statutory provision for governmental tort liability and it is fair to infer that the Legislature considered carefully the best means for enforcing the provisions of the Social Services Law and would have created a private right of action against erring governmental agencies if it found it wise to do so (*see McLean v City of New York*, 12 NY3d 194, 200-201 [2009]).

Contrary to plaintiff's contentions, *Smullen v City of New York* (28 NY2d 66 [1971]) and similar cases regarding the municipal assumption of control are not applicable. In *Smullen*, liability was triggered by an inspector's positive action in assuming direction and control at the accident site. Here, although ACS had mechanisms at its disposal for enforcing the Family Court order and was monitoring the infant's residence and family, it did not take positive action and control of the situation and household (*see Pelaez v Seide*, 2 NY3d 186, 204 [2004]). Accordingly, no special relationship was formed on the basis of positive direction and control by defendants.

The last consideration is whether this is one of a narrow class of cases in which a "special relationship" can arise from a duty voluntarily undertaken by a municipality to an injured person. In *Cuffy v City of New York* (69 NY2d 255, 260 [1987]), the Court of Appeals listed the elements of such a special relationship:

> "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking."

These elements are present here and were, in substance, pleaded in plaintiff's complaint. The Family Court's supervision order triggered specific, mandatory duties on the part of ACS which, it is alleged, its employees neglected to perform. It is further alleged that ACS' employees were aware of the dysfunctional and potentially dangerous environment in which the infant lived. Direct contact and reliance by someone other than the injured party may be sufficient to create a special relationship where the person making the contact was acting on behalf of his or her immediate family. Thus, in *Sorichetti v City of New York* (65 NY2d 461, 462 [1985]), the Court found a special relationship where a mother had sought the help of the police to protect her six-year-old daughter. Given ACS' contact with the infant's household, plaintiff has sufficiently alleged the remaining elements necessary for the existence of a "special relationship."

The court notes that this is a CPLR 3211 (a) (7) motion made prior to taking of any discovery by the parties. At this stage of the litigation, the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994].) The court finds that the complaint sets forth sufficient allegations as required by the Court of Appeals in *Cuffy*.

Under the circumstances of this case, the court finds that the doctrine of judicial immunity is inapplicable. In *Mosher-Simons v County of Allegany* (99 NY2d 214 [2002]), the Court of Appeals held that the doctrine of judicial immunity extended to a social services caseworker who had been ordered by the Fam-

ily Court to complete home studies of two parties who had requested custody of a child. It found that judicial immunity applied to those whose actions are an integral part of the judicial process and was limited to claims arising from the performance of the specific judicially delegated function. Here, the supervision of Hailey Gonzalez's home did not constitute the delegation of a judicial function; rather, the Family Court exercised its prerogative pursuant to the Family Court Act in directing ACS to protect Hailey Gonzalez from harm and ACS (and not the Family Court) became bound by specific regulatory obligations to supervise the home.

■ To the extent that defendants argue (in a footnote) that they are immune from liability based upon the discretionary nature of the activities complained about herein, such argument is misplaced. Discretionary municipal acts may never be a basis for tort liability, while ministerial acts may support liability where a special duty is found (*see McLean v City of New York*, 12 NY3d 194, 195 [2009]). "[D]iscretionary or quasi-judicial acts involve the exercise of reasoned judgment which could typically produce different acceptable results, whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result" (*Tango v Tulevech*, 61 NY2d 34, 41 [1983]). In this case, pursuant to the Family Court order of supervision, ACS was required to perform specific duties to ensure the safety of Hailey Gonzalez. Its actions were not discretionary and immunity does not attach to them. Accordingly, with respect to the first and second causes of action, the motion by defendants is denied.

■ Under CPLR 3130 (1), "a party shall not be permitted to serve interrogatories on and conduct a deposition of the same party pursuant to rule 3107 without leave of court" in an action to recover damages for personal injury or wrongful death predicated solely on a cause or causes of action for negligence. This limitation was apparently made by "a suspicious legislature [that was] fearful that wealthy litigants with a battery of lawyers could bury their poorer adversaries in a blizzard of paper" (Siegel, NY Prac § 361, at 452 [1978]). With the dismissal of plaintiff's constitutional claim, the remaining claims are based solely on negligence and CPLR 3130 (1) applies. Nevertheless, as a matter of discretion, "leave of court" as authorized by CPLR 3130 (1) should be granted under the facts herein (*see Farca v Semah*, 181 AD2d 757, 758 [1992]). In considering the six interrogatories proposed by plaintiff, it is possible to

discern, without any difficulty, plaintiff's search for the names of appropriate individuals to depose and, perhaps, for additional defendants to join in this action. Absent is any hint of an abuse of discovery as was feared by the Legislature. Accordingly, plaintiff is granted leave to serve additional interrogatories.[3] However, notwithstanding plaintiff's good intentions in attempting to "streamline" the depositions, interrogatories numbered 3-5 are stricken since a municipality has the right in the first instance to determine which of its officers or employees with knowledge of the facts may appear for a deposition (*see Filoramo v City of New York*, 61 AD3d 715 [2009]). If the individuals chosen by defendants have insufficient knowledge, plaintiff may demand production of additional witnesses. In order to avoid unnecessary delay, defendants should attempt to ascertain which employees have knowledge of ACS' policies with respect to court-ordered supervision, domestic violence counseling and the performance of criminal background checks.

---

**3.** Since defendants made their responses to plaintiff's first interrogatories contingent upon a confidentiality agreement between the parties which was never reached and the proposed interrogatories are a condensation of the original ones, the court finds that plaintiff should not be precluded from utilizing a "Second Notice of Discovery and Inspection." The court further notes that item "6," a demand for the names of the witnesses, could have been the subject of a separate demand unrelated to CPLR 3130.